**Samuel C. DYSART and Alma R. Dysart**
**v.**
**The UNITED STATES.**
No. 61–63.

United States Court of Claims.
Jan. 22, 1965.

Charles R. Cutler, Washington, D. C., for plaintiff. Kirkland, Ellis, Hodson, Chaffetz & Masters, Washington, D. C., of counsel.

Mitchell Samuelson, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. C. Moxley Featherston, Lyle M. Turner, and Philip R. Miller, Washington, D. C., were on the brief.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

LARAMORE, Judge.

This is a suit for the refund of $4,-548.48 collected as a penalty for the year 1954 for an underestimation of income:

tax. The government, although it concedes that the imposition of the penalty was erroneous, nevertheless was denied taxpayers' claim for refund since it has asserted an offset exceeding the amount sought due to an alleged income tax deficiency for the year 1954. The taxpayers, by this motion for summary judgment, seek to strike the government's setoff. It is also admitted that the statute of limitations bars the Commissioner of Internal Revenue from making an additional assessment predicated on the alleged error. Taxpayers' claim is in the amount of $4,548.48 plus statutory interest. The government's setoff is in the amount of approximately $130,000, although it is cognizable only to the extent of reducing taxpayers' claim to zero. The sole issue presented by this motion is whether in a suit for refund where both the taxpayers' claim and the government's setoff concern the same tax [1] for the same year by the same taxpayers, the right of the government to assert such a defense is an unconditional right (as the government contends), or whether, as taxpayers contend, such a right is subject to the court's discretion after evaluating the "equities" involved in each particular case.

In late 1954, taxpayers received payment of a judgment in the amount of $359,094.56 in a patent infringement suit. The suit concerned an invention which marked a major advance in the state of the art in the adding machine industry. In 1919, the invention was orally assigned by the inventor (taxpayers' father) to his company, The Dalton Adding Machine Company. The company was subsequently acquired by Remington Rand, Inc., which repudiated the agreement. After a patent was issued in 1935, extensive negotiations for settlement were conducted by the inventor's widow without success. Suit was filed in 1937 and protracted litigation continued until two judgments were paid, one in 1954 and one in 1957.

Late in December 1954, taxpayers received payment of the proceeds of their share of the first judgment. At that time, taxpayers, who had not filed a declaration of estimated tax for 1954, were living in Havana, Cuba. After receiving the unusual lump-sum income, they filed their joint income tax return and paid the tax shown to be due thereon to the District Director of Internal Revenue in Baltimore, Maryland. The return and payment were received by the District Director on January 19, 1955, four days after January 15, 1955, which fell on a Saturday. On December 22, 1956, after an audit of the return, the Internal Revenue Service took the position that the taxpayers had reasonable cause for failure to file a declaration of estimated tax for 1954. However, it assessed a penalty against taxpayers for underestimation of the 1954 tax. This action was based on 26 U.S.C. (I.R.C.1939) § 294(d) (2) (1952 Ed.) and Treasury Regulation 111, § 29.294–1(b) (3) (A), which in effect provided that in the event a taxpayer failed to file the required declaration of estimated tax, the amount of the estimated tax for the purposes of section 294(d) (2) was zero. On June 18, 1958, the regulation was held invalid by the Sixth Circuit in Acker v. Commissioner, 258 F.2d 568, and the decision was affirmed by the Supreme Court on November 16, 1959, Commissioner v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959).

In their 1954 income tax return, taxpayers treated the proceeds of the judgment as capital gains on the ground that all substantial rights in the invention had been transferred by the inventor. Taxpayer, Samuel C. Dysart, had two sisters who also received payments from the 1954 judgment, and they treated the proceeds in the same way. The returns were audited in three separate revenue districts which accepted the taxpayers' treatment of the proceeds of the judgment. However, the Internal Revenue

---

1. In this case, the recoupment involves the same taxpayers and the same tax year as the principal claim; the tax penalty is an addition to the tax, 26 U.S.C.

(I.R.C.1939) § 294 (1952 Ed.) and as such is considered as part of the income tax for the taxable year. See Rev.Rul. 56–492, 1956–2 Cum.Bull. 949.

Service found that the judgment included interest from the date the patent was issued to the date of judgment and held that the interest should be taxed as ordinary income. The taxpayers conceded the issue, and a deficiency was assessed and paid with respect to the taxes due on the interest.

In 1957, a final judgment covering the last three years of the patent's life was rendered in favor of the Dysart family. Taxpayers also reported the amount paid on this judgment as capital gain in their 1957 income tax return, but this treatment was challenged by the Internal Revenue Service. After taxpayers had filed a petition in the Tax Court, the suit was settled on the basis that taxpayers would pay 60 percent of the assessed deficiency.

On October 16, 1958, after the favorable decision by the Court of Appeals for the Sixth Circuit (but before the Supreme Court's opinion) in the Acker case, supra, taxpayers filed a timely claim for refund of the penalty assessed on their 1954 return. On June 20, 1960, about six months after the Supreme Court's decision in the Acker case, the Internal Revenue Service abandoned its previous grounds for disallowance of the refund of the penalty but asserted that the judgment damages, reported as capital gain in the 1954 return, should have been taxed as ordinary income and that, although the statute of limitations barred the deficiency, it should be used as a setoff against the refund due taxpayers. This suit followed after formal denial of the claim for refund.

Taxpayers argue that the government's defense of setoff or equitable recoupment must be judged by equitable principles and as a result of the government's inequitable conduct in this case, recoupment should be denied.

At the outset it should be pointed out that the defense of recoupment in a refund suit should not be confused with the broader and more fundamental defense of lack of overpayment of the particular tax involved in the suit for refund, traceable to the landmark decision by the Supreme Court in Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932). The former involves attempts to set off tax liability from one year against that for another year after the statute of limitations has run[2] or where attempts are made to set off the tax liability of one taxpayer against that of a second taxpayer.[3] This type of defense has been commonly referred to as "equitable recoupment." In these situations where the challenged item arose in a year other than in suit or where different parties are involved, the defense may only be maintained where a single or same transaction is involved.[4]

On the other hand, where both the taxpayer's claim and the government's setoff concern the same tax for the same year by the same taxpayer, the government's right to raise such a defense is unconditional and need not meet the "same transaction" requirement of the equitable recoupment defense. Here the right of the government is based on the broader principle that a taxpayer is not entitled to a refund unless he has in fact overpaid the particular tax, while in "equitable recoupment" the right to raise such a defense is based on the more limited principle that a party should not gain the protection of the statute of limitations where he has given a different tax treatment to the same transaction in different years.[5] Although the origin of these defenses may be traced to equitable principles, the right to raise a setoff is not subject to equitable considerations as taxpayers contend. We be-

2. E.g., McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937).

3. E.g., Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937).

4. See Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) (this case is sometimes cited as the originator of this doctrine); Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S. Ct. 271, 91 L.Ed. 296 (1946).

5. The same rationale applies where the same year is involved but you have related taxpayers. Stone v. White, supra.

lieve that both the government and the individual taxpayer have the legal right to raise a setoff without having to appeal to the court's discretion or to its evaluation of the particular equities. We find support for this conviction in the fact that Congress has chosen to incorporate the doctrine of "equitable recoupment" into our revenue laws by what is now commonly known as the mitigation provisions, sections 1311–1315 of the Internal Revenue Code of 1954. In so doing, Congress has enumerated a series of requirements which have to be met before these sections become operative and recoupment allowed. It is significant that none of these requirements are based on equitable considerations. If the requirements are met, there is no room for the court to look at the "equities" involved in each particular case and prevent their operation. We believe the same rationale should apply to the broader and more fundamental defense of lack of overpayment raised by the setoff defense involved in the instant case.

■■ The crucial factor in this refund suit is that both the taxpayers' claim and the government's setoff concern the same tax (income tax) for the same year (1954) by the same taxpayer. The government seeks the opportunity to balance against the $4,548.48 income tax penalty for 1954 (now admitted to have been erroneously collected) other income tax for 1954 which these taxpayers are said to have failed to report and pay. The established doctrine of setoff in tax cases gives the government that right. There is no room, in this situation, to deny the government its right of setoff because the taxpayers' claim is relatively small, or the government's counterdemand will put them to a burdensome trial, or because the underlying facts (leading to liability in 1954) are old and complex, or the Internal Revenue Service had a previous opportunity to assess the underpaid tax. To uphold the government's right to maintain the defense in this case, it is sufficient that the setoff involves the same type of tax, payable by these taxpayers, for the same year as the taxpayers' claim.

■ The theory of setoff for tax purposes seems to us to insist upon this result. In a refund action, the taxpayer cannot recover unless he has overpaid his tax. It is not enough that he can prevail on the particular items on which he sues, for he may have underpaid with respect to other components entering into that tax. Only if the overall balance moves his way can he recover. His entire tax liability under the particular tax return is therefore open for redetermination. The setoff is one mechanism by which the government alleges that, looking at the particular tax as a whole, the taxpayer has not in fact overpaid his tax. See Missouri Pacific Railroad Co. v. United States, Ct.Cl., 338 F.2d 668, No. 40–63, decided November 13, 1964, slip op., pp. 2–3, and cases cited.

The Supreme Court has never suggested that—in a refund suit in which the setoff involves the same tax, the same year, and the same taxpayer—the court may, or should, weigh "equities" to decide whether it would be fair, in the individual circumstances, to permit the government to assert the defense. Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932), the taproot of this branch of recoupment, was just such a case; the Supreme Court agreed with the court below (284 U.S. at 283, 52 S. Ct. at 146) that:

"* * * the ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability. While no new assessment can be made, after the bar of the statute has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax. The action to recover on a claim for refund is in the nature of an action for money had and received and it is incumbent upon the claimant to show that the United States has money which belongs to him."

The Court added flatly (ibid.):

"While the statutes authorizing refunds do not specifically empower

the Commissioner to reaudit a return whenever repayment is claimed, authority therefor is necessarily implied. An overpayment must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded."

There is not the slightest indication in the opinion that the Commissioner of Internal Revenue could not have made the correct computation within the limitations period; it appears, rather, that he changed his mind as to one deduction he had previously allowed and another which he had once rejected. Nevertheless, those circumstances, so similar to the ones at bar, did not deter the Court from laying down the unqualified rule that "an overpayment must appear before refund is authorized."

The Supreme Court has neither weakened nor departed from this rule which is a corollary of the basic postulate of the tax setoff. In Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946), involving equitable recoupment as opposed to the defense of setoff, the Court did declare that the doctrine of equitable recoupment should not be broadly applied, but the instances to which the Court referred all had to do with taxes for different years, to disparate kinds of taxes, or to separate taxpayers. There is nothing in the opinion qualifying or limiting the defense of lack of overpayment where the refund claim and the setoff both relate to the same tax, for the same year, payable by the same taxpayer.[6]

Similarly, the lower court rulings do not sanction the weighing of individual "equities" to deprive the government of the defense in such a case, nor do they reveal any distaste for setoff in that situation. Of the decisions called to our attention, those rendered in cases like this one—involving the setoff situation where you have the same tax, the same year, the same taxpayer—all [7] allow the setoff to be asserted, as a matter of right, without reluctance and without evaluation of such particular circumstances as the Treasury's delay, the burden on the taxpayer, or the hardship of disproving the setoff. Cuba R.R. Co. v. United States, 254 F.2d 280, 282 (2d Cir. 1958);[8] United States v. Pfister, 205 F.2d 538, 541–542 (2d Cir. 1953); Tait v. Safe Deposit & Trust Co., 70 F. 2d 79, 82 (4th Cir. 1934); Champ Spring Co. v. United States, 47 F.2d 1 (8th Cir. 1931); Globe Gazette Printing Co. v. United States, 13 F.Supp. 422, 425, 82 Ct.Cl. 586, 591–592 (1936), cert. denied, 298 U.S. 682, 56 S.Ct. 952, 80 L.Ed. 1403; Western Maryland Ry. Co. v. United States, 131 F.Supp. 873, 889–890, 897 (D.Md., 1955), aff'd per curiam, 227 F.2d 576 (4th Cir.1955), cert. denied, 351 U.S. 907, 76 S.Ct. 696, 100 L.Ed 1443 (1956); First National Bank of Miami v. United States, 235 F.Supp. 331 (S.D. Fla., 1964); cf. Roybark v. United States, 104 F.Supp. 759, 761–762 (S.D. Cal., 1952), aff'd 218 F.2d 164, 165 (9th Cir.1954). These opinions proceed on the essential principle that a taxpayer

---

6. McEachern v. Rose, 302 U.S. 56, 57, 59, 58 S.Ct. 84, 82 L.Ed. 46 (1937), involved different and unconnected tax years.

7. With one possible exception, see footnote 10, infra.

8. In the Cuba Railroad case, Judge Learned Hand, pointing out that the refund claim was for a credit for 1942 on the taxpayer's income tax and the setoff was for a deduction allowed on the taxpayer's income tax for the same year, said:

"We do not believe that Rothensies v. Electric Storage Battery Co., supra, meant to hold, when the refund and the set-off both depend upon what were the proper deductions in the same year, that the transactions which determine those deductions must be so narrowly connected. On the contrary, when the taxpayer seeks a refund for a credit mistakenly denied, he must be content to allow his tax for the same year to be corrected because of errors through which he has profited."

suing for a refund of a tax for a particular year must show that, in actuality, he overpaid that tax.

Almost all of the lower court cases on which taxpayers rely, clearly were concerned with the equitable recoupment defense involving separate taxes or separate tax years or different taxpayers.[9] The one possible exception is an unclear summary ruling by a district court which, if pertinent, is, in our opinion, plainly wrong on its own ground.[10]

■ Moreover, even if equitable considerations are used to bar the government, taxpayers' main complaint here is lack of diligence or laches, which factor we think should not be determinative in tax litigation. In Lewis v. Reynolds, supra, the Commissioner of Internal Revenue had the same opportunity to calculate the correct tax within the limitations period, but setoff was allowed without question. That is likewise true of almost all of the cases, cited above, which have permitted setoff. The delay here was not extraordinary, as these cases go, nor was it, in our opinion, unconscionably troublesome to the taxpayers. If the taxpayers' view is to be followed, the setoff defense will be severely limited in tax suits, if not eliminated, even in those areas in which it has been regularly allowed up to now. Diligence does not play that prime a role, either for the government or the taxpayer. In Bowcut v. United States, supra, 287 F.2d at 657, upholding recoupment by a taxpayer despite unexcused failure to file a timely claim for refund, the court pointed out that the taxpayer's diligence as to his legal rights is not controlling. It should likewise not be controlling against the government.

For these reasons, we deny taxpayers' motion for summary judgment and remand the case to a Trial Commissioner of this Court for further proceedings under the principle and procedure of Missouri Pacific Railroad Co. v. United States, Ct.Cl., 338 F.2d 668, No. 40–63, decided November 13, 1964.

COWEN, Chief Judge (dissenting).

With deference to the majority, I do not find support in the decisional law for two basic premises upon which the court's opinion is based: First, the opinion differentiates between two types of recoupment situations: (a) where both the taxpayers' claim and the Government's setoff concern a tax for the same year by the same taxpayers and (b)

---

9. United States v. Bowcut, 287 F.2d 654 (9th Cir. 1961) (taxpayer claimed to be precluded from recoupment by "clean hands" doctrine; different taxes—estate tax and income tax); Wood v. United States, 213 F.2d 660 (2d Cir. 1954) (different taxable years); Ford v. United States, 276 F.2d 17, 149 Ct.Cl. 558, 567–569 (1960) (different taxes—estate tax and income tax); Pond's Extract Co. v. United States, 134 F.Supp. 476, 479, 133 Ct.Cl. 43, 44, 48–50 (1955) (different taxes for different years); McNaghten v. United States, 17 F.Supp. 509, 84 Ct. Cl. 349 (1937) (different taxpayers—beneficiaries of a trust and the trustees); Lyman v. United States, 22 F.Supp. 14 (D.Mass., 1938) (different taxpayers—beneficiaries of a trust and the trustees). In O'Connor v. United States, 76 F.Supp. 962, 966–968 (S.D.N.Y., 1948), the court held that there was no merit to the government's defense of recoupment, not that the government was barred from raising the defense.

10. The short findings in LaFollette v. United States, 176 F.Supp. 192 (S.D. Cal., 1959) do not clearly show whether the setoff arose out of the same taxable year or an earlier period. In any event, the only reason given in the court's summary conclusions for denying the setoff is that limitations had run. That is almost always true in recoupment cases (see Lewis v. Reynolds, supra), and by itself obviously furnishes no sufficient ground for rejecting the defense. There are some decisions (Routzahn v. Brown, 95 F.2d 766 (6th Cir. 1938); Weiler v. United States, 191 F. Supp. 601 (N.D.Pa., 1961); Dupont v. United States, 28 F.Supp. 122 (D.Del., 1939)) denying leave belatedly to raise a defense of setoff which the government had failed to interpose at the proper time. These cases turn on the considerations of judicial administration concerned with the delayed amendments of pleadings and the belated raising of new issues—not with any general discretionary power over tax setoffs.

where there is an attempt to set off a tax liability for one year against that for another or to set off a tax liability of one taxpayer against that of a second taxpayer. I agree that this distinction is helpful in deciding whether there is present a set of facts in which recoupment has generally been permitted. However, it is not apparent how the distinction is relevant in resolving the problem whether equitable considerations are appropriate in a decision to permit or deny recoupment. I do not find that the case law reflects any difference in the equitable nature of the causes of action in the two situations. I believe that a lack of due diligence by the party asserting the setoff is equally germane in either situation.

Second, the court's opinion holds flatly that in the first situation described above, there is no room for the court to look at the "equities" involved in a particular case. I disagree because I do not find that the defense of lack of diligence or laches by the party asserting the setoff or seeking recoupment was presented or considered in the cases relied upon by the majority.

Further, I cannot agree that a decision in favor of plaintiffs under the peculiar facts of this case would, as a practical matter, spell the end of recoupment.

Contrary to the majority view, I believe that the case law, by implication and rationale, indicates that equitable considerations are germane to a decision as to whether the bar of the statute of limitations should be lifted in a case involving facts similar to those which are presented here.

A suit for the refund of taxes is an equitable action for money had and received, *indebitatus assumpsit*. Stone v. White, 301 U.S. 532, 534, 57 S.Ct. 851, 81 L.Ed. 1265 (1937); see also, Note, 24 Va.L.Rev. 81 (1937). The ultimate issue presented by the cause of action is whether the taxpayer overpaid his taxes; this places in issue, at the minimum, the entire tax liability for the same tax for the same year.[1] Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932); Cuba R. Co. v. United States, 254 F.2d 280 (2d Cir. 1958), cert. denied, 358 U.S. 840, 79 S.Ct. 64, 3 L.Ed.2d 75; United States v. Pfister, 205 F.2d 538 (8th Cir. 1953). A recovery on the defense asserted here (called "equitable recoupment") will not support an affirmative money judgment on behalf of the Government, but serves to reduce, *pro tanto*, the refund claim, Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 299, 67 S.Ct. 271, 91 L.Ed. 296 (1946).

However, it does not follow from the decisions cited above that, in every case where the Government attempts to recoup an item on the same tax return as the principal claim, the court must allow the defense to be asserted. Several aspects of the basic cause of action and the defenses thereto are also relevant in determining when equitable recoupment should be permitted. A suit for the refund of taxes is equitable in nature and subject to equitable defenses and the de-

1. In this case, the recoupment involves the same taxpayers and the same tax year as the principal claim; the tax penalty is an addition to the tax, 26 U.S.C. (I.R.C.1939) § 294 (1952 Ed.) and as such is considered as part of the income tax for the taxable year. See Rev.Rul. 56–492, 1956–2 Cum.Bull. 949. We are here presented with the inner limits of the doctrine of equitable recoupment and are not concerned with its outer extremities, including its use when several taxpayers are involved, see e.g. Stone v. White, 301 U.S. 532 (1937); when several taxes are in issue, see e.g. Bull v. United States, 295 U.S. 247 (1935), and Jones v. Fox, 162 F.Supp. 449 (D.Md. 1957), and when several tax years are involved, see e.g. McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937), and Springfield Street Ry. Co. v. United States, 312 F.2d 754, 160 Ct.Cl. 111 (1963). Also, this case is not covered by the statutory mitigation sections, 26 U.S.C. (I.R.C.1954) §§ 1311–1315 (1958 Ed.), see e. g. Gooding v. United States, 326 F.2d 988 (Ct.Cl.1964).

fenses must conform to equitable standards. In Stone v. White, 301 U.S. 532, 537, at pp. 534, 535, 57 S.Ct. 851, at pp. 852, 853, the Supreme Court commented:

"The action, brought to recover a tax erroneously paid, although an action at law, is equitable in its function * * *.

"Its use to recover upon rights equitable in nature to avoid unjust enrichment by the defendant at the expense of the plaintiff, and its control in every case by equitable principles, established by Lord Mansfield in Moses v. Macferlan, 2. Burr. 1005 (K.B. 1750), have long been recognized in this Court. * * * It is an appropriate remedy for the recovery of taxes erroneously collected, * * *. The statutes authorizing tax refunds and suits for their recovery are predicated upon the same equitable principles that underlie an action in assumpsit for money had and received. * * * Since, in this type of action, the plaintiff must recover by virtue of a right measured by equitable standards, it follows that it is open to the defendant to show any state of facts which, according to those standards, would deny the right, * * * even without resort to the modern statutory authority for pleading equitable defenses in actions which are more strictly legal, * * *."

For proper perspective, the nature of a tax refund suit in relation to other forms of litigation should be considered. The usual plaintiff-defendant role is reversed. When an item of tax is in issue, the taxpayer pays and then sues to get his money back. The rules of distraint and levy available after an administrative determination of tax liability provide a sufficient impetus for the "pay-and-then-sue" chronology. The basic characteristics of this procedure were summed up in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 at pp. 699-700 (1935) at pp. 259-260,

"* * * Once the tax is assessed [by the administrative agency], the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. * * * The statute might remit the government to an action at law wherein the taxpayer could offer such defense as he had. A judgment against him might be collected by the levy of an execution. * * * the sovereign has resorted to more drastic means of collection. The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt.

"* * * the usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer. * * * But these reversals of the normal process of collecting a claim cannot obscure the fact that after all what is being accomplished is the recovery of a just debt owed the sovereign."

It should be noted that in the action at bar, were the Government to be the plaintiff suing to collect the tax attributable to the penalty, it would have no means of adding the time-barred item to its recovery. The plaintiff-defendant posture in refund actions has not escaped comment, Note, 24 Va.Rev. 81, 82 (1937); Note, 26 Texas L.Rev. 110, 112 (1947).

It has also become apparent that equitable recoupment has been less than warmly received by the Supreme Court and other Federal courts, because the defense avoids the statute of limitations. McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937); Rothensies v. Electric Storage Battery Co., supra; Wood v. United States, 213 F.2d 660 (2d Cir. 1954); Ford v. United States, 276 F.2d 17, 149 Ct.Cl. 558 (1960); see generally, 10 Mertens, Law of Federal Income Taxation §§ 58.41 and 58.42 (1958).

Upon this background, it is my opinion that the avoidance of the statute of limitations in order to permit equitable re-

coupment in an individual case is subject to and deserving of close scrutiny. Even in those cases where recoupment *may* be allowed, it need not be allowed if certain equitable considerations present in the factual pattern of the case under consideration indicate that the defendant's conduct was inequitable. This approach is not new.

In United States v. Bowcut, 287 F.2d 654 (9th Cir. 1961), the principal question decided was whether the "clean hands" maxim would bar recoupment. An absence of fair dealing by the Government, coupled with a general lack of diligence, appears to have prompted the denial of the recoupment of an erroneous refund in LaFollette v. United States, 176 F.Supp. 192 (S.D.Cal.1959).

In several other cases,[2] the Government has been denied leave to amend its answer to plead the defense of recoupment. These cases turn on different criteria than are pertinent in the case at bar (i. e., they concern the effect of the amendment on the fairness of the proceeding). However, since leave to amend rests in the sound discretion of the court, these cases are at least indicative of careful control of the defense of equitable recoupment by the courts, particularly in light of the liberal rules regarding amendments of the pleadings.

In any case where the Government seeks recoupment, it seems appropriate to consider the lack of diligence on the part of the Internal Revenue Service in deciding whether to lift the bar of the statute of limitations. If the Service has had ample opportunity to scrutinize the facts pertinent to the taxability of the item in question and has reviewed such facts, there is far less reason to permit recoupment. McNaghten v. United States, 17 F.Supp. 509, 84 Ct.Cl. 349 (1937); Lyman v. United States, 22 F. Supp. 14 (D.Mass.1938). Cf. O'Connor v. United States, 76 F.Supp. 962 (S.D. N.Y.1948).

In the case at bar, we are faced with a lack of diligence by the defendant. Plaintiff Dysart's 1954 income tax return and those of his two sisters were audited in three separate revenue districts. The care with which the audit was made and the extent to which the Government then had knowledge of the facts regarding the judgment is evidenced by the Government's action in separating the interest from the principal amount of the judgment and in assessing a deficiency against the taxpayers on the ground that the interest was taxable as ordinary income. Again, after the proceeds of the second judgment were reported in plaintiffs' 1957 tax return, a suit involving the same issues of fact and law as are raised by the defense in this case was filed in the Tax Court. Instead of litigating the question, the Government chose to settle. Thus the Government has neglected to utilize two opportunities it had to litigate the question within the period of limitations. There is no suggestion in the record that plaintiffs have withheld any information regarding the taxability of the item in question or have misrepresented any of the facts relating thereto. Nor is there any indication that the defendant now has facts or information which would better enable it to determine the taxability of the disputed item than it had in December 1956, when it accepted plaintiffs' treatment of the proceeds of the judgment in the 1954 tax return.

In denying recoupment under circumstances where it appears that the Government was less negligent than here, this court in McNaghten v. United States, supra, 17 F.Supp. at page 515, 84 Ct.Cl. at page 361, stated:

" * * * the Commissioner [of Internal Revenue] was bound by no interpretation of the law, except his own, with respect to the question before him. Moreover, all the facts necessary to a determination and as-

---

2. Routzahn v. Brown, 95 F.2d 766 (6th Cir.1938), cert. denied 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557; Weiler v. United States, 191 F.Supp. 601 (N.D.Pa.1961); Dupont v. United States, 28 F.Supp. 122 (D.Del.1939).

sessment of taxes against the trustees and the beneficiaries * * * were before him and fully known by him * * * before any statute of limitation would run against the legal assessment of any tax * * *. He simply neglected properly to assess the tax and permitted the limitation statute to run. There were no representations of any kind by plaintiffs that misled, or could have misled, the Commissioner, and there is no basis for estoppel."

Again, in Lyman v. United States, supra, 22 F.Supp. at p. 15, where the court denied defendant's motion for judgment on the pleading and disallowed recoupment, the court stated:

" * * * If either the beneficiary of the trust or the government is to suffer a loss, in good conscience and equity, that loss should be borne by the government, since its failure to assess a tax against the trust must be deemed to border on negligence, for it was acquainted with the set-up of the trust instrument."

As a consequence of the defendant's negligence, the trial of the issues presented by its setoff has been delayed for years. The delay necessarily affects plaintiffs' litigation posture for it casts upon plaintiffs the burden of proving the details of a transaction that had its origin more than 40 years ago. In such a situation, it is clear that the defendant is guilty of laches, an equitable principle which has often been invoked to defeat tardy suits against the Government.

I think it proper to balance the interest of plaintiffs in laying defendant's stale claim to rest against whatever inequities there may be in permitting plaintiffs to recover, especially when the defendant has been less than diligent in asserting its claim and when there are no circumstances to indicate that plaintiffs' right to a refund of the penalty is inconsistent with its treatment of the proceeds of the judgment. Under the facts before us, the following language of the Supreme Court in Rothensies v. Electric Storage Battery Co., supra, 329 U.S. at p. 301, 67 S.Ct. at p. 273, seems particularly appropriate:

" * * * a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

"We have had recent occasion to point out the reason and the character of such limitation statutes. 'Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' "

I am mindful of this court's statement in Pond's Extract Company v. United States, 134 F.Supp. 476, 133 Ct.Cl. 43 (1955), that "[t]he task of distinguishing between factual situations that warrant the application of equitable recoupment in tax cases is admittedly a difficult one, and the distinction when made in some cases will be a tenuous one." However, after a review of the facts, I believe that defendant's lack of diligence and the resulting adverse effect on plaintiffs' case constitute appropriate grounds for refusing to lift the bar of the statute of limitations to permit the Government to interpose its setoff. For these reasons, I would grant plaintiffs' motion for summary judgment.

COLLINS, Judge, joins in the foregoing dissenting opinion.