Kashiwa, Judge,
dissenting:
On December 26,1978, the trial judge in this case allowed defendant’s motion to assert the five setoffs now in issue. Plaintiff then, under our Rule 53(c)(2)(ii), challenged the correctness of the trial judge’s action. This court in its order of February 13, 1979, denied plaintiffs request for review, holding the trial judge’s action to be proper. The net effect was defendant’s being allowed to assert five setoffs.
A majority of this panel would now enter judgment for plaintiff removing four of defendant’s five setoffs from this action. Plaintiffs alternative motions to strike these setoffs were, as stated by the majority, founded on "defendant’s alleged bad faith in filing false or sham pleadings * * *.” Yet they also point out that "we do not question [defendant’s] good faith [in asserting these four setoffs] * * By pointing out the lack of bad faith, it is implicit that plaintiff is being granted relief under neither of his motions. The only logical explanation for the majority’s action must be its, sua sponte, striking these setoffs under some other ground. However, the majority cannot seem to make up its mind as to just what this ground is. All that is clear is that its result hinges on our decision in Missouri Pacific Railroad v. United States, 168 Ct. Cl. 86, 338 F. 2d 668 (1964).
The majority at one point views Missouri Pacific as approving the legitimacy of defendant’s assertion of setoffs subject to a proviso removing defendant’s right to do so. The proviso apparently is that defendant must have "concrete and positive evidence” that there is some substance to each setoff it attempts to assert. Support for such a proviso ostensibly comes from a rather extensive quotation from Missouri Pacific. The majority declares at a later point that "[i]t is quite apparent now that when defendant filed its amended answer it did not have 'concrete and positive evidence’ as to the other four offset issues.” In view of these *722 four setoffs being stricken, one might intelligently view the majority as enunciating a rule that this court will strike a defense raised by way of setoff unless defendant at some point prior to trial makes a showing of "concrete and positive evidence” with respect to such setoff. The seeming logic underlying such a rule appears to be that if defendant raises a setoff and this court subsequently determine that such "concrete and positive evidence” was lacking then, in accordance with the above proviso, defendant never in fact had the right to assert the setoff. In the absence of this right, the only proper action is thus for this court to strike the setoff.
After expressly stating that the quotation from Missouri Pacific limits defendant’s right to assert setoffs, the majority declares that:
The parties here rightly treat Missouri Pacific as stating the law applicable to fishing expeditions conducted in a search for offset defenses. The present case deals with discovery abuse rather than the substantive law of offsets in tax litigation. It appears to be in large part the one foreseen by Judge Laramore in Missouri Pacific.
In saying this, the majority again relies on this very same quotation. At a later point, they state that:
* * * [Defendant must possess "concrete and positive evidence” before it initiates discovery into matters relevant only as to establishment of offsets. Massive discovery on the basis of the suspicions entertained here is exactly the "mere fishing expedition or method of discouraging taxpayers from seeking refunds” which the Missouri Pacific decision disapproved.
Since the majority feels defendant lacked such "concrete and positive evidence” with respect to four of the setoffs, and these were in fact stricken, it is reasonable to read the majority as relying on Missouri Pacific in support of a rule allowing imposition of sanctions for defendant’s abuse of discovery with respect to setoffs. The rationale arguably is that defendant has the right to discovery concerning a setoff only if it first shows by "concrete and positive evidence” that there is some substance to the setoff. If it seeks discovery in the absence of such evidentiary showing, *723 then it has abused its discovery rights, allowing this court to impose sanctions, including striking the setoff.
There being no other cohesive threads of logic in the order, the majority must be striking the four setoffs under either or both of these two approaches. The difficulty is that the majority’s reliance on Missouri Pacific is misplaced. The case did not approve the legitimacy of defendant’s assertion of setoffs or articulate a proviso limiting defendant’s right to do so. Nor did it articulate a rule allowing this court to impose sanctions for defendant’s seeking of discovery in the absence of "concrete and positive evidence.” These were not even issues presented to the court. The sole issue in the case was the proper allocation at trial of the burden of proof with respect to the setoffs asserted. This is clear from the procedural posture of Missouri Pacific. As stated at the outset of the opinion, the case came before us pursuant to the Government’s requesting us to "review the Order of [the] Commissioner * * * granting taxpayer’s motion to fix the burden of proof of the government’s setoff defense upon the government * * *.”168 Ct. Cl. at 88, 338 F. 2d at 669.[1]
Preliminary to reaching this issue, the opinion did state that defendant had the right to assert time-barred defenses by way of setoffs. (It was for just this narrow proposition that Missouri Pacific was cited in our February 13, 1979, order.) In doing so, however, we were not stating some new concept of tax jurisprudence. In recognizing defendant’s right to assert setoffs, we were simply applying the law as *724 articulated in Lewis v. Reynolds, 284 U. S. 281 (1932). The Supreme Court having approved the legitimacy of defendant’s assertion of setoffs, there was nothing for us to approve. There is thus no merit to the majority’s insistence that Missouri Pacific "approved the legitimacy of the assertion of offsets by defendant * * * after limitations have run * * *.”
As above indicated, in support of their assertion that a proviso exists limiting defendant’s right to assert setoffs, the majority relies on an extensive quote from Missouri Pacific. They are in fact reading this portion of the opinion out of context. The quoted portion actually deals solely with the issue of allocation at trial of the burden of proof. It is not at all directed to a limitation on the right to assert setoffs. Nor could it be in view of the narrow issue in Missouri Pacific. In addition, it would be impermissible to extend this language beyond the issue of allocation of burden of proof. Reduced to its essentials, in the portion of the case quoted, we there held that the burden of proof would shift to plaintiff only after defendant first demonstrates that it has some concrete and positive evidence that there is some substance to its setoff claim. It is also clear from the majority’s quote that this burden of proof shifting rule was founded on equitable principles. The majority, by relying on this rule as justification for a proviso limiting defendant’s right to assert setoffs, is therefore making defendant’s right to do so hinge on equitable considerations. Yet, subsequent to Missouri Pacific, this court stated that:
* * * [T]he right to raise a setoff is not subject to equitable considerations as taxpayers contend. We believe that * * * the government * * * [has] the legal right to raise a setoff without having to appeal to the court’s discretion or to its evaluation of the particular equities.
*****
The Supreme Court has never suggested that-in a refund suit in which the setoff involves the same tax, the same year, and the same taxpayer — the court may, or should, weigh "equities” to decide whether it would be fair, in the individual circumstances, to permit the government to assert the defense. [Dysart v. United *725 States, 169 Ct. Cl. 276, 281-283, 340 F. 2d 624, 627-628 (1965).]
The majority’s extension of Missouri Pacific is therefore directly contrary to Dysart. In light of Dysart’s being decided such a short time after Missouri Pacific, both being authored by the same judge and both being decided by this court sitting era banc, the conclusion is inescapable that this court specifically meant for Dysart to be a bar to any such extension of Missouri Pacific. It is therefore improper for the majority to rely upon Missouri Pacific as support for a limitation of defendant’s right to assert setoffs.
The majority seeks to meet this criticism by attempting to distinguish Dysart from the situation now before this court. They somehow feel this is possible because "Dysart [did] not involve, as here, a situation where defendant has no facts and amends its answer to assert offsets in order to qualify itself to search for facts by discovery.” I do not agree. As discussed, infra, I feel defendant does have sufficient facts in support of the stricken setoffs. Nor do I understand how defendant’s motive for raising the setoffs affects Dysart’s application to our case. Examination of motive would involve us in an inquiry as to the equities of allowing defendant to assert the setoffs. Since Dysart itself rejected such inquiry into equitable considerations, motive is not a valid point of distinction. The majority also attaches weight to Dysart’s containing no language modifying the authority of Missouri Pacific. Without addressing the implications of this statement, the short answer is that there was no reason for Dysart to modify Missouri Pacific. The two cases involved totally different issues. As previously indicated, Missouri Pacific was concerned only with allocation at trial of the burden of proof with respect to setoffs. The sole issue in Dysart was whether:
* * * in a suit for refund where both the taxpayers’ claim and the government’s setoff concern the same tax for the same year by the same taxpayers, the right of the government to assert such a defense is an unconditional right (as the government contends), or whether, as taxpayers contend, such a right is subject to the court’s discretion after evaluating the "equities” involved in *726 each particular case. [169 Ct. Cl. at 278-279, 340 F. 2d at 626 (footnote omitted).]
Contrary to the majority’s belief, Dysart is thus applicable to the facts of this case and does bar extension of Missouri Pacific’s burden of proof rule in the manner attempted by the majority.
Missouri Pacific’s lack of support is not the sole difficulty with the purported rule allowing striking for abuse of discovery. As an initial matter, the majority seems to misapprehend the proper scope of discovery in the context of setoffs. At one point they state that "[djiscovery by defendant cannot be regarded as a means of conducting a reaudit, as defendant seems to wish to do here.” This is simply incorrect. As we stated in Missouri Pacific:
The Supreme Court in Lewis v. Reynolds * * * established the right of the government to reaudit a return and challenge by way of a defense, in the nature of a setoff, in a refund suit, the validity of the tax treatment accorded any item in taxpayer’s return * * *.
* * * * *
* * * [Taxpayer’s assertion of a refund claim] of necessity puts in issue every credit or deduction found in the particular tax return for which refund is sought * * *. [168 Ct. Cl. at 88-90, 338 F. 2d at 670-671.]
Once defendant asserts a setoff, it therefore does have the right to use discovery as a means of conducting a reaudit.
Although not clearly expressed, in articulating its rule limiting discovery and imposing sanctions for abuse thereof, the majority was also influenced by a number of other factors. Among these are (1) the Commissioner’s previous opportunity to impose assessments with regard to the items now sought to be raised as setoffs, (2) the fact that allowing discovery would make this litigation time consuming, burdensome and costly, and (3) the complexity surrounding the four stricken setoffs. This court has previously declared that:
* * * There is no room, in this situation, to deny the government its right of setoff because the taxpayers’ claim is relatively small, or the government’s counter-demand will put them to a burdensome trial, or because *727 the underlying facts * * * are old and complex, or the Internal Revenue Service had a previous opportunity to assess the underpaid tax. * * * [Dysart, 169 Ct. Cl. at 282, 340 F. 2d at 628.]
It is thus clear that these factors cannot be considered in determining defendant’s right to assert setoffs. It is accordingly incorrect to attach any weight to them in defining the scope of discovery. Any other conclusion would produce the anomalous result that such factors would not bar defendant’s right to assert setoffs but might prevent defendant from obtaining discovery with respect thereto. Yet, as a practical matter, what good is it to allow defendant to assert a defense and at the same time not allow any discovery? It is implicit in this court’s discovery rules that a party should be allowed discovery with respect to any defense which he asserts.
There is also a certain illogic to the majority’s approach with regard to discovery. Prior to allowing discovery with respect to a setoff, they would require defendant to make a showing by "concrete and positive evidence” that there is substance to the setoff. Yet very often discovery is the only way that defendant could hope to obtain such evidence. The majority thus places defendant in a "Catch-22” situation. They deny defendant discovery for failure to first make the evidentiary showing which can only be made on the basis of the results of discovery.
The final difficulty is that the striking of these setoffs for abuse of discovery is an unduly harsh result. If the majority feels defendant’s discovery attempts are overbroad or that defendant should first make a showing of "concrete and positive evidence,” the proper course would be to not strike, but instead enter an order limiting discovery and/or requiring defendant to make such a preliminary showing. If defendant failed to comply with this order, the court would then be justified in imposing sanctions for abuse of discovery. At the present stage of this litigation, defendant’s not having failed to comply with any discovery order of this court, striking is totally inappropriate. See Rule 76 of the Rules of the United States Court of Claims. I note in this regard that Rule 37 of the Federal Rules of Civil Procedure, which is broader than our Rule 76, would also not allow an *728 order imposing sanctions under the present state of facts. The inappropriateness of the majority’s result is especially true in light of the fact that this order is the very first time that such a discovery rule with respect to setoffs has ever been articulated by this court. How could defendant possibly be expected to comply with a rule which heretofore never existed? The majority also points out that both defendant and plaintiff have abused the discovery privilege. Why then is only defendant being singled out for the imposition of sanctions?
The majority’s two "justifications” for striking are for all the above reasons incorrect approaches to use. The correct rule to be applied in determining whether to strike is to be deduced from examination of the essential nature of setoffs. As recognized by this court in Missouri Pacific and as previously referred to, "[t]he Supreme Court in Lewis v. Reynolds, 284 U. S. 281 (1932), established the right of the Government to reaudit a return and challenge by way of a defense, in the nature of a setoff, the validity of the tax treatment accorded any item in [the] taxpayer’s return * * *.” 168 Ct. Cl. at 88-89, 338 F. 2d at 670. [Emphasis supplied.] Setoffs of the type here at issue are, therefore, to be regarded as equivalent to all other defenses pleaded by defendant. The same rule governing the striking of all other defenses should thus determine when setoffs are to be stricken. This court’s Rule 38(f) pertains to motions to strike. It provides that "the court may order stricken * * * any insufficient defense.” In deciding whether a defense is insufficient, those facts asserted in defendant’s answer which pertain to such defense and in any supplemental documents filed in support thereof must be accepted as true. A setoff should thus be stricken by this court only if, even after accepting defendant’s factual allegations as correct, it is an insufficient defense. This was in essence the very test adopted in our order of February 13,1979.
In sustaining the trial judge’s action, we there pointed out that:
The Government has a settled right to raise such defenses, regardless of the amount of the plaintiffs original claim, as long as the setoff involves the same kind of tax, the same taxpayer, and the same taxable *729 year as the plaintiffs claim. * * * We are in no position now to say that defendant’s defenses in this case are unfounded. [Emphasis supplied; citations omitted.]
It is thus apparent that our refusal to strike the setoffs was based upon their not being unfounded. This, however, was tantamount to holding they were not insufficient defenses. Implicit in our prior holding was our accepting as true the facts pleaded by defendant prior to the date of this order.
I continue to feel not only that our prior order set forth a proper test to use in deciding whether to strike setoffs under Rule 38(f) but that viewing all the facts asserted by defendant to date, and assuming them to be correct, defendant’s five setoff defenses are not unfounded. The majority, however, takes the position that we are now in a position to say that the four setoffs which they are striking are unfounded. They do this by attaching insufficient weight to the affidavit filed by defendant’s trial attorney in this case, Michael J. Dennis (the "Dennis affidavit”). This affidavit, though filed after the date of the amended answer (in which the setoffs were asserted), nevertheless sets out defendant’s reasons for asserting these setoffs. As such, it is only appropriate to view it as a supplemental document filed in support of the amended answer. In deciding whether to strike, it is therefore appropriate to look to the Dennis affidavit as well as the amended answer.
The majority order contains some quotations from this affidavit. However, the portions excerpted set forth an incomplete picture of defendant’s foundation for asserting the setoffs which are now being stricken. With regard to the setoff based on the Taurus cattle feeding loss deduction, the trial attorney states as follows:
With respect to the Taurus cattle-feeding loss deduction, my examination of the administrative files indicated that taxpayer had entered into an agreement whereby Stratford of Texas, Inc., would purchase cattle for taxpayer and would provide quantities of feed and other services. The administrative files further indicate that, pursuant to the transaction, the risk of loss was nominal and a prepayment for feed was involved. I am familiar with other taxpayers’ cattle investments with Stratford of Texas, Inc., and am aware of tax problems which have resulted from these investments. The Internal Revenue *730 Service takes the position that taxpayers in these investments are not entitled to any feed or other service deductions on various grounds, among which are: (1) the taxpayers are not the owners of the cattle, but, in reality, have simply made loans to the corporate agent * * *; (2) the taxpayer’s payments are, in reality, deposits * * *; and (3) the expenditure for feed results in the creation of an asset having a useful life extending substantially beyond the close of the taxable year * * *.
Regarding the other three stricken setoffs, the affidavit declares that:
With respect to the investments in the 1971 Exploration Program, Belco 1971 Oil and Gas Fund, Ltd., and Austin Funds, Ltd., I was familiar with similar oil and gas tax investments and, furthermore, aware that loss deductions of such investments may be improper on any of the following grounds: (1) the partnership does not acquire an economic interest in wells * * *; (2) the payments for intangible drilling and development expenses are made as a deposit or alternatively result in the creation of an asset having a useful life extending substantially beyond the close of the taxable year * * *; (3) the allocation to intangible drilling costs under the drilling contract may not represent a reasonable allocation between the total drilling contract price and other items of expense.
These more extensive quotes establish in my mind sufficient facts for us to say that those setoffs were not unfounded. Contrary to the majority’s belief, defendant is not making generalized allegations that tax shelters are somehow intrinsically evil or that loss deductions generated by them are always improper. Rather, defendant is explicitly indicating exactly why it believes the losses flowing from these specific shelters are improper and give rise to valid setoffs. This should be adequate to avoid striking under Rule 38(f). These four setoffs should therefore not be stricken.
The majority’s mistaken reliance on Missouri Pacific, its articulation of unsupported and erroneous rules, its failure to rely upon Rule 38(f), and its reaching an erroneous result compel me to respectfully dissent from this order.

 Footnote 11 of Missouri Pacific provides as follows:
"We recognize that the right of the government to challenge items found in unrelated tax returns (situations (3) and (4)) is not present in every case. See Rothensies v. Electric Storage Battery Co., 329 U. S. 296, 301 (1946). We are concerned in this case only with establishing who has the burden of proof once it is determined that the government can properly challenge the item by way of a setoff defense.” [168 Ct. Cl. at 91, 338 F. 2d at 671.]
I note that certain language in the second sentence of this footnote might be construed as indicating our concern with defendant’s generalized right to assert setoffs. However, as is clear from the first sentence of this note, the language in question was limited to situations where the item which gives rise to the taxpayer’s refund claim and the item which gives rise to the setoff are not found in the same tax return of plaintiff. (There denominated situations "3” and "4.”) This is a situation where defendant does not have the automatic and absolute right to assert setoffs.
The present case, however, involves setoffs arising out of items found in the same tax return with respect to which plaintiff seeks a refund. There is thus no way that the language of this note could be read as imposing in this case a limitation on defendant’s right to assert setoffs.