ESTATE OF Edward P. BENDER,
Martha A. Bender, Executrix,

v.

COMMISSIONER OF
INTERNAL REVENUE.

Appeal of ESTATE OF Edward P.
BENDER, Martha A. Bender,
Executrix.

ESTATE OF Edward P. BENDER,
Martha A. Bender, Executrix,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

Nos. 86–5699, 86–5700.

United States Court of Appeals,
Third Circuit.

Argued May 21, 1987.

Decided Aug. 18, 1987.

Rehearing and Rehearing In Banc
Denied Sept. 9, 1987.

John W. Taylor (argued), Ebensburg, Pa., for appellant/cross-appellee.

Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup, Robert A. Bernstein, Barbara I. Hodges (argued), Dept. of Justice, Tax Div., William F. Nelson, Chief Counsel, I.R.S., Washington, D.C., for appellee/cross-appellant.

Before SLOVITER, BECKER and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

The executrix of the estate of Edward Bender (the Estate) has appealed, and the Commissioner of Internal Revenue (the IRS) has cross-appealed, from the July 2, 1986 decision of the United States Tax Court which assessed a deficiency in estate tax in the amount of $163,500.40. The deficiency results from the manner in which certain income tax liabilities and income tax "overpayments" were treated by the Tax Court.

The Tax Court made two holdings which led to its calculation of the estate tax deficiency. It first held that the Estate was obliged to offset gross income tax liabilities against gross income tax overpayments for the *same* year. This holding forms the basis for the Estate's appeal. Second, the Tax Court held that the Estate was not obliged to offset net income tax liabilities against net income tax overpayments for *different* years. This holding forms the basis for the IRS's appeal.

We reject the Estate's position and accept the IRS's position. By doing so, we hold that the Tax Court erred in one of its two underlying holdings. This requires that we vacate the Tax Court's order of July 2, 1986 and remand for a recomputation of the estate tax deficiency which was predicated on both of these holdings.

This court has jurisdiction to review the final order of the Tax Court pursuant to 26 U.S.C. § 7482(a)(1). Venue is proper pursuant to 26 U.S.C. § 7482(b)(1)(A).

## I.

The essential facts in this case were stipulated before the Tax Court. App. at 14 et seq. On May 13, 1978, Mr. Bender died testate as a domiciliary of Carrolltown, Pennsylvania, and his will was admitted to probate on May 17, 1978. The Testator was survived by a wife and three children. The relevant portions of The Testator's will stated:

1. I direct that my just debts and funeral expenses be paid promptly after my decease.

2. All the rest, residue and remainder of my property, real, personal and mixed, I give, devise and bequeath to my beloved wife, Martha, if she survives me....

On January 31, 1979, Mrs. Bender, the sole legatee and devisee under her husband's will, filed a qualified disclaimer in which she disclaimed an interest in three items from the Testator's estate: (1) a 75 percent interest in all the assets and liabilities of the E.P. Bender Coal Company; (2) 100 percent of a $125,000 note due to Mr. Bender's estate from his son John Bender; and (3) 100 percent of a $125,000 note due to Mr. Bender's estate from his son Edward Bender, Jr. App. at 71. Mrs. Bender's disclaimer was a qualified disclaimer under 26 U.S.C. § 2518.

The E.P. Bender Coal Company was a coal stripping business that was operated as a sole proprietorship by the Testator from 1972 until his death. In each of these years, the Testator filed a joint income tax return with Mrs. Bender, who earned no taxable income in her own right.

On the date of his death, the Testator had outstanding tax liabilities for 1972 and 1974–1978. After the Testator's death, a separate, short-year return for 1978, show-ing a net operating loss of $814,472, was filed on his behalf. Amended Tax Returns and Applications for Tentative Refunds for the years 1972 through 1978 were filed. The Amended Tax Returns for 1972–1977 carried back the Testator's 1978 operating loss of $814,472. These and other adjustments to the Testator's income tax returns resulted in a variety of revisions to the Testator's income tax liabilities. These adjustments are reflected in the following table:

Estate of Edward P. Bender[1]

| Year | Gross Income Tax Liability | Gross Income Tax Overpayments | Net Income Tax Overpayments (Liabilities) |
|---|---|---|---|
| 1972 | $ 1.50 | $ 15,578.01 | $ 15,576.51 |
| 1973 | $ 0.00 | $ 40,314.56 | $ 40,314.56 |
| 1974 | $ 317,597.50 | $ 73,344.86 | ($244,252.64) |
| 1975 | $ 360,901.30 | $511,208.70 | $150,307.40 |
| 1976 | $ 55,025.15 | $ 0.00 | ($ 55,025.60) |
| 1977 | $ 779,205.15 | $139,891.99 | ($639,313.16) |
| 1978 | $ 12,137.71 | $ 0.00 | ($ 12,137.71) |
| | $ 1,524,868.76 | $780,338.12 | ($744,530.64) |

As a result of all of the adjustments, there were three individual years (1972, 1973 & 1975) in which the Testator had overpaid his income taxes. However, the Testator's tax liabilities for the remaining four years (1974, 1976, 1977 & 1978) more than offset these overpayments. The Testator's net tax liability to the IRS at the time of his death was $744,530.64. No refund relating to any overpayment of income tax for any of the individual years 1972 through 1978 ever issued to the Testator, Mrs. Bender, or the Estate.

On February 9, 1979, Mrs. Bender, as executrix, filed the federal estate tax return for the Testator's estate. In calculating the gross assets and the gross liabilities of the Estate, Mrs. Bender treated the gross overpayments as an asset of the Estate. She treated the gross outstanding tax liabilities as a debt of the Estate.[2] The IRS, on the other hand, netted out each year's income tax liabilities and overpayments, and it concluded that overall, the

---

1. App. at 143 & 172.

2. This treatment had the result, favorable to the Estate, of allowing a maximum amount to pass through to Mrs. Bender, qualify for the marital deduction, and thus reduce the size of the taxable estate. Since 1982, an unlimited marital deduction is allowed for property included in the gross estate that passes directly to the surviving spouse. 26 U.S.C. § 2056.

Estate was indebted to the Government for income tax liabilities.

On February 3, 1982, the IRS delivered a notice of deficiency, disagreeing with, among other things, the Estate's decision to treat as an asset the "overpayments" which resulted from the $814,472 loss carry-back. The IRS recomputed the estate taxes on the assumption that the Testator's entire account with the IRS created only a single debt for the Estate, a debt equal to the gross outstanding tax liability minus the gross income tax overpayments. Specifically, under the IRS's computation, the Estate had *no tax overpayment asset,* only a tax debt.

The Estate appealed the notice of deficiency to the Tax Court. Before the Tax Court, the Estate defended its decision to treat *all* gross income tax overpayments as assets of the Estate and *all* gross income tax liabilities as separate debts, *both within a given year and between years.* The Tax Court agreed with the IRS that the Estate was obliged to offset gross income tax overpayments against gross income tax liabilities *within any single given year.* However, it agreed with the Estate that it was entitled to report as an asset the net overpayment in any one year without offsetting that overpayment against a net income tax liability from a *different year.* The Tax Court therefore permitted the Estate to include as an asset the Testator's net annual income tax overpayments, and to treat as a debt his net annual income tax liabilities. In short, the Tax Court required *intra-year* offsets, but did not require *inter-year* offsets.

On April 22, 1986 the Tax Court filed its opinion setting forth these two principles. Pursuant to Tax Court Rule 155, the Tax Court withheld entry of its decision for the purpose of permitting the parties to submit computations consistent with its legal holdings. On July 2, 1986, the Tax Court entered its decision which determined that the estate tax deficiency was $163,500.40. Mrs. Bender, as executrix of the Estate appealed from the Tax Court's July 2, 1986 decision. The IRS cross-appealed.

The only two issues presented in this appeal are: (1) whether the Tax Court erred in holding that the Estate was not obliged to offset net income tax liability against income tax overpayments for different years (the IRS's appeal); and (2) whether the Tax Court erred in holding that the Estate was obliged to offset gross income tax liabilities against gross income tax overpayments for the same year (the Estate's appeal).[3] We exercise plenary review over the Tax Court's holdings.

## II.

We first consider the IRS's appeal. The IRS argues that the Tax Court erred in holding that the Estate could treat the Testator's net annual income tax overpayments as assets of the Estate when the Testator had an overall net liability on the date of his death.

The Tax Court began by noting that the value of the Testator's gross estate, for estate tax purposes, is properly determined with reference to the value of his property at the time of his death. 26 U.S.C. § 2031(a).[4] The Tax Court then examined the statute which empowers the IRS to offset tax overpayments in one year against tax liabilities in other years, and it noted that the statute utilizes discretionary language rather than mandatory language:

> § 6402. **Authority to make credits or refunds (a) General rule.**—In the case of any overpayment, the Secretary, within the applicable period of limitations, *may* credit the amount of such over-

3. The Estate urges us to consider whether the deficiency calculation of $163,500.40 in the Tax Court's July 2, 1986 decision was in error. Essentially the Estate argues that although the Tax Court's decision of April 22, 1986 held that gross annual overpayments could be treated as separate assets, the Tax Court's deficiency tax figure in the July 2, 1986 order did not accord that treatment to all of the Estate's annual overpayments. Because we do not agree with the Tax Court's holding, *see* Part II *infra,* it is obvi-

ous that the deficiency must be recalculated on remand. The Estate at that time may assert its position as to the correct amount of the deficiency.

4. "The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." 26 U.S.C. § 2031(a).

payment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any balance to such person.

26 U.S.C. § 6402(a) (emphasis added). The Tax Court reasoned that, as of the date of his death, the Testator's net annual income tax overpayments and liabilities were ascertainable, but whether the IRS would choose to exercise its discretion to offset overpayments against liabilities in different years was *not* ascertainable. The Tax Court reasoned further that an estate is not obliged to assume that the IRS will exercise its discretion in the manner most harmful to the estate's interests. It therefore concluded that the Estate was entitled to treat net annual overpayments as assets and net annual liabilities as debts.

We disagree for two reasons. First, we recognize that, as a general rule, a mere expectancy is not an asset for estate tax purposes. Second, because the Estate in fact had *no reasonable expectation* that a refund would be awarded, the Estate's "interest" in a refund did not even rise to the level of a genuine expectancy, much less a valid property interest that would be includible as an asset of its gross estate under 26 U.S.C. § 2033.[5]

### A.

Under 26 U.S.C. § 2033, the value of a decedent's gross estate includes "the value of all property to the extent of the interest therein of the decedent at the time of his death." Despite this broad language, which requires that a wide range of assets be included in the decedent's gross estate, mere expectancies that do not rise to the level of property interests are not generally includible as assets. *See* B. Bittker, Federal Taxation of Income, Estates and Gifts, § 125.7 ("the traditional distinction between 'property' and 'expectancies' or 'hopes' is entrenched in the case law"). *See also Estate of Bogley v. United States*, 514 F.2d 1027, 1037 (Ct.Cl.1975) (mere expectancy arising from an expression of corporate intent not includible as an asset of the gross estate because not a property right).

Under 26 U.S.C. § 6402(a), the discretionary power to offset the Testator's net annual overpayments against his net annual liabilities from other years rests exclusively with the IRS. The Testator did not have an affirmative right to compel the IRS to issue a refund for those years in which he had overpaid his taxes.[6] Any hope that the Testator may have had that his overpayments would be refunded, rather than offset against his liabilities, therefore, was a mere expectancy that did not rise to the level of a property interest. We conclude, contrary to the conclusion of the Tax Court, that the Testator's net tax overpayments for individual years never attained the status of independent assets for estate tax purposes.

### B.

We need not consider what circumstances, if any, would result in the inclusion of an expectancy in a decedent's gross estate. Here it is clear that there was no reasonable basis for the Estate to expect that the IRS would fail to offset the Testator's annual overpayments against his annual liabilities. We are not persuaded that it is reasonable for a taxpayer to assume that he will receive an income tax refund from the IRS when he has a net income tax liability in his overall account, particularly when the published policy of the IRS states that offsets are applied as a matter of course. *See* Internal Revenue Service Manual, § 30(55)9.[7]

---

**5.** "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." 26 U.S.C. § 2033.

**6.** The IRS in fact *did* exercise its statutory authority and *did* offset the Testator's net annual overpayments against his net annual liabilities.

**7.** The Internal Revenue Service Manual § 30(55)9 provides, in relevant part:

> **Refund of Overpayments/Refund Preparation** (1) When all posting and analysis has been performed and it has been determined that a refund is due the taxpayer, the following procedures are performed.
>
>     \*    \*    \*    \*    \*    \*
>
> (a)(4) Offsetting Credits Within An Account— Credit Modules [i.e. overpayments] are offset against debit modules [i.e. underpayments] within the account (earliest tax period first)

Although we have been directed to cases in which the IRS has exercised its discretion to refrain from offsetting an income tax overpayment against an income tax liability, all such cases have *prevented recoveries of refunds* and therefore have benefited the Treasury. *See, e.g., Acker v. United States*, 519 F.Supp. 178 (N.D.Ohio 1981) (where refund "due" taxpayer was barred by statute of limitations, refusal of IRS to offset against current liability upheld). *See also Hansen-Sturm v. United States*, 201 F.Supp. 392 (S.D.N.Y.1962) (IRS not required to refund or credit net overpayment of taxes beyond statute of limitations period). The Estate has directed us to no case in which the IRS has, in the exercise of its discretion, failed to offset refunds due against outstanding tax liabilities in circumstances such as the instant case.

Both reason and logic persuade us that before an individual may claim that he has an income tax refund asset he must demonstrate that he does not owe more money to the IRS than the IRS owes him. As the court in *Dysart v. United States*, 340 F.2d 624, 628, 169 Ct.Cl. 276 (1965), stated: "Only if the overall balance moves his way can he recover." We recognize, of course, that *Dysart*, as we discuss in Part III, *infra*, did not involve two different tax years, but rather the same tax year. However, in the present context, we can perceive no difference in the application of the principle between an *inter-year* situation and an *intra-year* situation.

Here the Testator overpaid his taxes for three years in the amount of $206,198.47. He underpaid his taxes for four other years in the amount of $950,729.11. At the time of his death, the Testator *owed the IRS* $744,530.64. At the time of his death, the Testator had only a *net liability* in his account with the IRS; he had no tax overpayment *asset* to pass along to his estate. In terms of *Dysart*, the "overall balance" simply did not "move his way." We conclude that the Estate had no reasonable expectation that the IRS would fail to apply the Testator's overpayments against his liabilities.

### III.

■ Having held that the IRS is entitled to offset a net annual income tax payment in one year against a net annual income tax liability in another year, *a fortiori* we must hold that the IRS can offset a gross income tax liability against a gross income tax overpayment within the same year. The court in *Dysart, supra*, considered a situation similar to the situation presented by the individual tax years 1972, 1973 and 1975 of the present case.

In *Dysart*, the taxpayer sought a refund of some $4,000 which had been collected as a tax penalty for underestimating his 1954 income tax. The IRS conceded that the imposition of the penalty was erroneous. Nevertheless, the taxpayer's claim for refund was denied because the IRS claimed an offset arising from an income tax deficiency for the year 1954 which was greater than the amount of the claimed refund. The taxpayer's claim for refund was rejected. In so holding, the court explained the theory underlying the IRS's right to setoff:

In a refund action, the taxpayer cannot recover unless he has overpaid his tax. It is not enough that he can prevail on the particular items on which he sues, for he may have underpaid with respect to other components entering into the tax. Only if the overall balance moves his way can he recover. His entire tax liability under the particular tax return is therefore open for redetermination. The setoff is one mechanism by which the government alleges that, looking at the particular tax as a whole, the taxpayer has not in fact overpaid his tax.

*Id.* at 628.

In holding that each gross annual income tax overpayment was not independent of each gross income tax liability for the same year, the Tax Court, which ruled against the Estate on this issue, acknowledged the *Dysart* theory, app. at 180, as do we. In so

when the credit module contains a settled return and is not frozen from offsetout. The overpayment credits are applied against the

debit balance modules (including unassessed failure to pay penalty and/or interest) unless the debit module is frozen ...

holding, the Tax Court found that the offset principle was "akin to the principle that one cannot deduct losses incurred in a transaction without also declaring the profits." *Id.*

We agree with the Tax Court that the IRS is entitled to net out *intra-year* transactions just as we have held that the IRS is entitled to net out *inter-year* transactions.

## IV.

We will vacate the Tax Court's decision of July 2, 1986, which determined a deficiency of $163,500.40, and remand for a redetermination of the Estate's tax deficiency consistent with this opinion.