**William H. MAY and Betsy S. May, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 79–3177.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 24, 1980.

Decided March 25, 1981.

Rehearing and Rehearing En Banc Denied May 12, 1981.

John A. West, Asst. U. S. Atty., Lexington, Ky., Judith H. Johnson, M. Carr Ferguson, Gilbert Andrews, Robert A. Bernstein, Mary Jennings, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

William A. Young, Frankfort, Ky., Frederick L. Russell, McGuire, Woods & Battle, Charlottesville, Va., for plaintiffs-appellees.

Before BOYCE F. MARTIN, Jr., and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

In this appeal, the United States contests the District Court's ruling that taxpayer

William H. May [1] could deduct his share of Florida Downs and Turf Club, Inc.'s 1970 and 1971 operating losses. May was president, a director and a shareholder of Florida Downs, which had elected to be taxed as a "small business corporation" under Subchapter S of the Internal Revenue Code, 26 U.S.C. § 1371 *et seq.* The United States contends that the Subchapter S election was not available to Florida Downs because it was a member of an "affiliated group." We agree.

Florida Downs was organized as a Florida corporation in 1969, and in that year it purchased all the assets of Florida Downs and Turf Investments, Inc. (F.D. & T. Investments). Those assets included the horse racing track operated by Florida Downs and all the outstanding stock of Oldsmar Properties, Inc. Oldsmar, organized in 1953, was a wholly owned subsidiary of the successive corporations which owned and operated the racing facility. Its sole asset was a 120-acre tract of land located directly across the road, which is the county boundary, from the race track. The property was used by the racetrack as a parking lot.

Most of Oldsmar's records were destroyed in a 1968 fire. Other evidence, however, indicates that between 1957 and 1965 Oldsmar leased the parking lot to its parent corporation at rents ranging from $7,500 to $11,000 annually. During 1966, Oldsmar granted an easement over its land to the Florida Gas Transmission Company. In 1967, Oldsmar's directors executed a mortgage on the property to secure a loan to F.D. & T. Investments. The instrument named both Oldsmar and F.D. & T. as mortgagors. Finally, in 1970, Oldsmar granted another easement, this time to Florida Power Corporation. The $12,000 consideration was paid, however, directly to Florida Downs.

Oldsmar filed corporate income tax returns for 1969, 1970, and 1971. It reported no income and no expenses; the forms bore the notation "CORPORATION INACTIVE." During the years at issue, Oldsmar had no office, bank account, or employees. It negotiated no leases with and received no rent from Florida Downs. Florida Downs paid all the upkeep expenses of the Oldsmar tract, as well as the real estate taxes and other carrying charges associated with it.

Subchapter S of the Internal Revenue Code provides that "any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter." 26 U.S.C. § 1372(a). One effect of such an election is to make the net operating loss of a small business corporation deductible pro rata by its shareholders rather than by the corporation itself. 26 U.S.C. § 1374(a).

Excluded from the definition of "small business corporation" are those corporations which are members of an "affiliated group." 26 U.S.C. § 1371(a). Generally, a corporation which owns at least eighty percent of another corporation's voting and non-voting stock is a member of an "affiliated group." 26 U.S.C. § 1504(a). However, § 1371(d) provides an exception to that rule:

(d) Ownership of certain stock.—For purposes of subsection (a), a corporation shall not be considered a member of an affiliated group at any time during any taxable year by reason of the ownership of stock in another corporation if such other corporation—

(1) has not begun business at any time on or after the date of its incorporation and before the close of such taxable year, and

(2) does not have taxable income for the period included within such taxable year.

In the District Court, the taxpayers offered the following arguments in support of their motion for summary judgment: 1) there had been a practical liquidation of Oldsmar; 2) Oldsmar had not "begun business;" and 3) in any event, Oldsmar's cor-

1. Betsy S. May is a party to this action solely because she filed joint returns with her hus-

band for the years in question.

porate existence should be disregarded for tax purposes.

The District Court rejected the taxpayers' first two contentions. It found that there had not been a practical liquidation of Oldsmar and that Oldsmar had in fact "begun business" for purposes of § 1371(d). In consequence, Florida Downs was precluded from asserting the § 1371(d) exception. The court went on, however, to hold that Oldsmar's corporate identity should be disregarded. Applying the principle of "substance over form," it ruled that Oldsmar's business activity under Florida Downs' ownership was insufficient to merit treatment as a separate corporate entity.

We find no error in the District Court's first two holdings. The determination that there was no practical liquidation of Oldsmar is amply supported by the record. There is evidence that Oldsmar's corporate identity was maintained for a specific business purpose. The land owned by Oldsmar was across a county line from Florida Downs' racetrack. The testimony of a former Oldsmar director indicated a belief that separate ownership of properties located in different counties was advantageous under Florida's racetrack licensing laws.

It is also clear that Oldsmar had "begun business" within the meaning of § 1371(d). The negotiation of leases with the parent corporation, the granting of easements and the execution of a mortgage all constitute business activities. That Oldsmar may have become inactive after its acquisition by Florida Downs is irrelevant; the beginning of business "at any time after the date of incorporation" and before the close of the tax years in question precludes reliance on § 1371(d).

We disagree, however, with the District Court's conclusion that Oldsmar's corporate identity should be disregarded. Florida Downs was free to organize its affairs as it chose. It did so in a manner which made it a member of an affiliated group. Having made that decision, the shareholders of Florida Downs "must accept the tax consequences of [their] choice, whether contemplated or not." *Commissioner v. National*

*Alfalfa Dehydrating and Milling Co.*, 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1977). Accordingly, we hold that Florida Downs was ineligible for Subchapter S tax treatment. The judgment of the District Court is reversed, and the District Court is directed to enter judgment for the United States.