EDWARD S. SMITH, Circuit Judge.
 

 In earlier proceedings before the Court of Claims, appellant was held to have received unrelated business taxable income in the course of its direct mail solicitation efforts.
 
 [1]
 
 . On remand for calculation of quantum of recovery, the Claims Court held that the expenses of the fundraising must be allocat
 
 *1571
 
 ed between the taxable and exempt parts of the solicitation program, and it provided formulas for making the allocation.
 
 [2]
 
 We
 
 affirm
 
 and remand for determination of the exact amounts owed to appellant.
 

 I.
 

 Disabled American Veterans (DAV) is a tax-exempt organization under the Internal Revenue Code,
 
 [3]
 
 whose purpose is the assistance of disabled veterans. During the years in question, 1970 through 1973, DAV had three main sources of income: general contributions, rental of its mailing list to other organizations, and the Special Solicitations direct mail program.
 
 [4]
 
 Under the Special Solicitations program, potential donors were offered different premiums (books, maps, charts, watch calendars) in return for contributions of $2, $3, or $5. While many people would contribute one of the stated amounts and receive a premium, others would receive no premium or receive a premium of less value than their contribution because their contributions were less than $2, more than $5, or because they requested that no premium be sent.
 

 The tax-exempt status of the general contributions was never disputed, and the Court of Claims held that the rental of mailing lists was taxable as unrelated business taxable income under the code, sections 512-513.
 
 [5]
 
 With respect to the Special Solicitations program, the court held that $5 contributions for premiums were the only part of the program that constituted unrelated business taxable income, with the gross income from this portion of the program to be computed from the retail value of the premiums concerned.
 
 [6]
 
 All other parts of the program were exempt. The court remanded for calculation of “the exact amount of recovery.”
 
 [7]
 

 On remand, the Claims Court determined the retail value of the $5 premiums. This finding is not disputed on appeal. The court also held that both the direct and indirect expenses of the Special Solicitations program must be allocated between the taxable and exempt parts of the program. This conclusion is the subject of the present appeal.
 

 DAV argues that all direct expenses of the Special Solicitations program should be allocated to the taxable part of the program.
 
 [8]
 
 DAV claims that allocation of direct expenses is a new defense, not pleaded, raised for the first time on remand, in violation of Court of Claims rules and basic principles of equity and fairness. Alternatively, DAV argues that the applicable Treasury Regulations do not permit allocation of these expenses. We consider these arguments in turn.
 

 II.
 

 DAV argues that the recalculation of deductions is improperly raised at this
 
 *1572
 
 point because Court of Claims Rule 38 required that “[e]very defense * * * be asserted in the responsive pleading” and warned that all defenses not so raised were waived. Ct.Cl.R. 38(b), (h). DAV also argues that fairness and equity forbid the raising of this new defense, relying on a Sixth Circuit case of 1938,
 
 Routzahn v. Brown.
 

 [9]
 

 The Claims Court responded by emphasizing the high standards that the Court of Claims traditionally applied to es-toppel against the Government
 
 [10]
 
 and it found a lack of reliance by DAV. We need not enter the estoppel thicket, however, for we hold that there is simply no “new defense” before us. The 1981 Court of Claims decision, overturning the position of the Internal Revenue Service, necessitated re-computation of tax liability in any case, and the decision placed no limitations on the method or scope of recomputation.
 
 [11]
 

 The Government’s original position was that the entire Special Solicitations program was unrelated business taxable income and accordingly allowed all of the direct expenses
 
 [12]
 
 of the program as deductions. After the partially adverse Court of Claims decision, the Government recalculated the deductions. It explained that its original position with respect to deductions — that all direct Special Solicitations expenses were deductible — was based on its original position that all Special Solicitations income was taxable. The position on income had been unsuccessful, so the original deduction calculations had to be adjusted by allocating deductions.
 

 The revised position on deductions was not new. In stipulations entered prior to the first trial in the Court of Claims trial division, the parties recognized that, in the event that any Special Solicitations income was held taxable,
 

 the defendant then contends that the amounts of deductions allowable in determining net income from Special Solicitations must be
 
 recalculated.
 
 While DAV reserves all rights to object to such contention of the defendant as to any
 
 rede-termination of allowable deductions,
 
 the parties have agreed that
 
 the question of the allowable deductions,
 
 under such circumstances,
 
 shall be deferred,
 
 if necessary,
 
 for further proceedings
 
 under Rule 131(c). [Emphasis supplied.]
 

 Stipulation 99(b). It is clear from the stipulation that all parties understood that recalculation of deductions by the Government would accompany any result that did not entirely conform to the Government’s original position. Furthermore, the question of allowable deductions was not litigated or decided in the prior proceedings, and the Government’s change of position on deductions was a logical response to the Court of Claims decision. Therefore, the recalculation introduced no considerations that DAV could not or should not have anticipated.
 
 [13]
 

 Most important, the remand to the trial court generally charged that court to determine the exact amount of recovery.
 
 [14]
 
 In so doing the Court of Claims instructed the trial court to make a just and lawful calculation, considering all of the factors it deemed relevant. One obviously relevant consideration was the proper amount of deductions. The Claims Court was therefore bound to consider deductions and to calculate them accurately regardless of who suggested the particular method used. Indeed, the Claims Court held — and we agree,
 
 see infra
 
 part III — that allocation of deductions was required by law; therefore, it had no choice but to allocate them. The days are long gone when technical rules of pleading
 
 *1573
 
 could be used to force a court to arrive at a result contrary to recognized fact or law.
 

 III.
 

 A.
 

 Turning to the question whether allocation of direct expenses was permitted or required by the applicable law, our starting point is the Internal Revenue Code, which permits organizations to deduct from their unrelated business taxable income “the deductions allowed by this chapter which are directly connected with the carrying on of [the unrelated] trade or business.” I.R.C. § 512(a)(1).
 
 [15]
 
 The relevant deduction “allowed by this chapter” is that for “all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.” I.R.C. § 162(a).
 

 It is settled that section 162(a) in other contexts requires allocation of expenses between the part that is used for business and the part that is not.
 
 [16]
 
 There is no reason for or logic in deleting the general allocation requirement in the present context.
 
 [17]
 
 Quite the contrary: the allocation requirement of section 162(a) is
 
 reinforced
 
 by the language of section 512(a), which permits only those deductions which are “directly connected” to the unrelated business. It would be inconsistent with the code to attribute to the taxable part of the Special Solicitations program all of the program’s expenses.
 

 The applicable regulation also addresses allocation:
 

 Where facilities or personnel are used both to carry on exempt functions and to conduct unrelated trade or business, expenses, depreciation, and similar items attributable to such facilities or personnel (as, for example, items of overhead) shall be allocated between the two uses on a reasonable basis. * * *
 

 Treas.Reg. § 1.512(a)-l(c) (1967). DAV argues that subsection (c) allows allocation only of expenses relating to “facilities or personnel”; other expenses (postage and mailing, for example), it argues, are governed by subsection (b) and must be attributed entirely to the taxable unrelated business.
 
 [18]
 

 
 *1574
 
 The logic of this argument is not compelling. The patent purpose of the regulation is to require allocation, not to limit allocation to certain kinds of expenses. Subsection (c) refers only to “facilities or personnel” because those are the kind of expenses most likely to be spread between both business and exempt activities.
 
 [19]
 
 This case presents a single program having both taxable and exempt aspects, which is a rather unusual situation and simply unanticipated by the regulation. The allocation proposed by the Claims Court is entirely in harmony with the allocation contemplated in subsection (c).
 

 Subsection (b) also compels this result. All of the expenses of the program are not “attributable
 
 solely
 
 to the conduct of unrelated business” (emphasis supplied); therefore, they cannot all be deducted. We conclude that the applicable portions of the code and regulations require allocation and that the Claims Court correctly so held.
 

 B.
 

 The remaining issue is the correct proportion to be used to allocate the expenses between taxable and exempt activities. The regulation requires only that the allocation shall be “on a reasonable basis.” Treas.Reg. § 1.512(a)-l(c).
 

 The way to arrive at the correct figure is to compare the taxable receipts to the total receipts and then to apply that proportion to expenses.
 
 [20]
 
 To allocate direct expenses — cost of premiums, postage, handling — the Claims Court compared the receipts from sales of $5 premiums (the only taxable portion of the Special Solicitations program) to “total gross receipts from the direct mail solicitations.” For indirect expenses — salaries, general overhead — the court compared the $5 premium receipts to the total receipts of DAV.
 
 [21]
 

 The figures obtained by these comparisons obviously reflect the correct approach, but a dispute has arisen on appeal concerning the proper meaning of “total gross receipts from the
 
 direct mail solicitations”
 
 in the formula for allocation of direct expenses. DAV contends that this term covers both the Special Solicitations program and another direct mail program, the “iden-to-tag” program.
 
 [22]
 
 While this addition would decrease the size of the fraction (and so decrease the deductions) by increasing the denominator, it would also logically permit DAV to allocate part of the expenses of the idento-tag program to its taxable income. The Government would eliminate idento-tag expenses and receipts altogether, arguing that the trial judge intended to refer only to the Special Solicitations program.
 

 The Claims Court opinion refers only to the Special Solicitations program until the discussion of the correct proportion, at which point “direct mail solicitations” is used. It would be surprising if the scope of the computations was intended to be increased without discussion in the opinion, so
 
 *1575
 
 an ambiguity exists. On remand, therefore, the Claims Court must decide whether to include the idento-tag program expenses and receipts
 
 or
 
 to exclude the idento-tag program altogether from the unrelated business taxable income allocation.
 
 [23]
 
 While exclusion of the idento-tag program appears at first glance to be the logical choice since the Special Solicitations program has been treated separately throughout the proceedings, it is for the Claims Court to determine initially which method most accurately reflects DAV’s deductible expenses. If either of the parties is aggrieved by the decision, it may appeal at that time.
 

 We affirm the judgment of the Claims Court and we remand for clarification of the proportion to be used in allocating direct expenses and for final calculation of the exact amount of recovery.
 

 AFFIRMED AND REMANDED.
 

 [1]
 

 .
 
 Disabled American Veterans v. United States,
 
 650 F.2d 1178 (Ct.Cl.1981).
 

 [2]
 

 . Pursuant to order of this court dated October 4, 1982, Judge Merow entered a judgment on October 8, 1982, corresponding to the decision recommended by him on June 22, 1982, in this case.
 

 [3]
 

 . I.R.C. § 501(c)(4) (1976).
 

 [4]
 

 . The facts are set out in greater detail in the Court of Claims opinion, 650 F.2d at 1180-85.
 

 [5]
 

 . The tax treatment of business income of exempt organizations is set out at I.R.C. §§ 511— 515 (1976 & Supp. V 1981). “Unrelated business taxable income” means
 

 “ * * * the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business * I.R.C. § 512(a)(1). “Unrelated trade or business” means
 

 “ * * * any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 * * I.R.C. § 513(a).
 

 [6]
 

 . 650 F.2d at 1187, 1190-91.
 

 [7]
 

 . 650 F.2d at 1191.
 

 [8]
 

 . It is, of course, to DAV’s advantage to deduct as much as possible from its taxable income. It cannot deduct — nor would there be any point in it — expenses against exempt income.
 

 [9]
 

 .
 
 Routzahn v. Brown,
 
 95 F.2d 766, 769-70 (6th Cir.1938).
 

 [10]
 

 . The Government cites
 
 Bornstein v. United States,
 
 345 F.2d 558, 563 (Ct.Cl.1965).
 

 [11]
 

 .
 
 See supra
 
 note 7.
 

 [12]
 

 . Direct expenses would include the cost of the premiums and mailing costs. Indirect expenses would include general overhead and administrative salaries.
 

 [13]
 

 . DAV also argues that it would have pressed its objections to the trial court’s Special Solicitations issue more vigorously had it anticipated the allocation of deductions. This is at best a strategic choice and DAV is bound by it.
 

 [14]
 

 . 650 F.2d at 1191.
 

 [15]
 

 .
 
 See supra
 
 note 5.
 

 [16]
 

 . See
 
 Griffin & Co. v. United States,
 
 389 F.2d 802, 813 (Ct.Cl.1968) (allocation was between business and personal uses).
 

 [17]
 

 .
 
 See Iowa State Univ. of Science & Technology v. United States,
 
 500 F.2d 508, 522 (Ct.Cl. 1974).
 

 [18]
 

 . The full texts of these subsections read:
 

 “(b)
 
 Expenses attributable solely to unrelated business.
 
 Expenses, depreciation and similar items attributable solely to the conduct of unrelated business are proximately and primarily related to that business and therefore qualify for deduction to the extent that they meet the requirements of section 162, section 167, or other relevant provisions of the Internal Revenue Code. Thus, for example, salaries of personnel employed full-time in carrying on unrelated business are directly connected with the conduct of the unrelated business and are deductible in computing unrelated business taxable income if they otherwise qualify for deduction under the requirements of section 162. Similarly, depreciation of a building used entirely in the conduct of unrelated business would be an allowable deduction to the extent otherwise permitted by section 167.
 

 “(c)
 
 Dual use of facilities or personnel.
 
 Where facilities or personnel are used both to carry on exempt functions and to conduct unrelated trade or business, expenses, depreciation, and similar items attributable to such facilities or personnel (as, for example, items of overhead) shall be allocated between the two uses on a reasonable basis. The portion of any such item so allocated to the unrelated trade or business is proximately and primarily related to that business, and shall be allowable as a deduction in computing unrelated business taxable income in the manner and to the extent permitted by section 162, section 167, or other relevant sections of the Internal Revenue Code. Thus, for example, assume that X, an exempt organization subject to the provisions of section 511, pays its presidenta salary of $20,000 a year. X- derives gross income from the conduct of unrelated trade or business. The president devotes approximately 10 percent of his time during the year to the unrelated business. For purposes of computing X’s unrelated busi
 
 *1574
 
 ness taxable income, a deduction of $2,000 ($20,000 times 10 percent) would be allowable for the salary paid to its president.”
 

 [19]
 

 . See, e.g., Rev.Rul. 76-402, 1976-2 C.B. 177 (school with summer tennis camp only had dual use of staff and facilities).
 

 [20]
 

 . This assumes that a formula must be used because direct accounting information is not available. The Claims Court obviously made this assumption and it has not been demonstrated to us that the assumption was incorrect.
 

 [21]
 

 . These comparisons can be expressed as fractions, with the numerators being the $5 premium receipts and the denominators the direct mail receipts and total receipts, respectively, thus:
 

 direct expenses =
 

 $5 premium receipts receipts from direct mail solicitations
 

 indirect expenses =
 

 $5 premium receipts total DAV receipts.
 

 [22]
 

 . An “idento-tag” is a miniature license plate to be hung on a key chain. The tags were mailed to the public without obligation to contribute.
 

 [23]
 

 . There are no procedural barriers to the Claims Court receiving any additional information necessary to obtain these figures.