**530**

SOUTHEAST BANK OF ORLANDO,
et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 281–80T.

United States Claims Court.

May 20, 1983.

John J. Reid, Orlando, Fla., for plaintiffs.

Bruce W. Reynolds, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## ORDER

NETTESHEIM, Judge.

Defendant has cross-moved for computation of the amount of judgment to be entered for plaintiffs Southeast Bank of Orlando, et al. ("plaintiffs"), successor trustees to Sun First National Bank of Orlando. In opposing defendant's computation, plaintiffs urge that the amount of judgment should not be reduced as defendant requests.

## FACTS

In 1979 the Court of Claims issued its decision in *Sun First National Bank v. United States,* 221 Ct.Cl. 469, 607 F.2d 1347 (1979), holding that the amount of gain on the sale of stock paid to a trust following the death of an income beneficiary was received by the trust as income with respect to a decedent and that, as such, the trust was entitled to a deduction against such income for the estate taxes attributable to the gain. The tax years in question were 1969–72.

Prior to the decision in *Sun First National Bank,* plaintiffs' predecessor trustees also filed the same refund claim for the 1973 tax year. After defendant answered, the later-filed claim came before the Court of Claims on defendant's assertion that the statute of limitations barred the suit. Rejecting defendant's argument in *Southeast Bank v. United States,* 230 Ct.Cl. ——, 676 F.2d 660 (1982), the court granted plaintiffs' cross-motion for summary judgment and ruled on the merits that the *Sun First National Bank* decision "is fully controlling" and that "[p]laintiffs must prevail." 230 Ct.Cl. at ——, 676 F.2d at 665. The court remanded the case to the Trial Division of the former Court of Claims to determine the amount of recovery.

A dispute surfaced with respect to computation when the Internal Revenue Service proposed to reduce plaintiffs' recovery of assessed taxes and interest, $52,865.94, by $5,249.39 based on liability for the minimum tax on items of tax preference, pursuant to the Internal Revenue Code of 1954, 26 U.S.C. §§ 56, 57 (1970 & Supp. III 1973) ("IRC").[1] The asserted liability is based on

---

1. Basically, the minimum tax imposes a tax on items of tax preference. The minimum tax is calculated by determining, first, the income tax liability for a given year and then subtracting such tax and any available tax carryovers from the sum of the items of tax preference (such as

plaintiffs' adjustment to income in 1972 resulting from the Court of Claims' decision in *Sun First National Bank,* which had the effect of negating a tax carryover and thereby decreasing the amount that could be subtracted from the taxpayer's item of tax preference (a capital gains deduction) for the 1973 tax year.

The parties proceeded with cross-motions based on stipulated facts. Defendant opened with its contention that the asserted liability for minimum tax only arose on recomputation and should be allowed as a computational adjustment. Alternatively, defendant argues that the amount had been offset properly, because plaintiffs cannot show prejudice and defendant raised the offset at the earliest practicable moment.

Plaintiff responded that, since October 17, 1979, the date *Sun First National Bank* issued granting plaintiffs' refund, defendant had been on notice that the tax carryovers from 1972 were no longer available and that, therefore, defendant cannot at this late date assert an offset for a minimum tax liability for 1973. Plaintiffs also challenge defendant's characterization of the assessment as resulting from a computational adjustment and argue that it is, in fact, a new issue which cannot be raised at the computation stage.

Briefing was completed on April 18, 1983, upon defendant's submission of an additional authority, and the matter is decided on submission without oral argument.

## DISCUSSION

The court's inquiry begins and ends with the Supreme Court's decision in *Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76

a capital gains deduction) exceeding $30,000. This yields the minimum tax base. Ten percent thereof is the minimum tax.

Section 56 as in effect for 1973 provided in pertinent part:

(a) In General.—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 10 percent of the amount (if any) by which—

(1) the sum of the items of tax preference in excess of $30,000, is greater than

L.Ed. 293 (1932), wherein petitioners sued for refund after the Commissioner disallowed certain deductions, including one for state inheritance taxes, and assessed a deficiency. Upon petitioners' request for refund before suit, the Commissioner took the position that another deduction for attorney's fees had been allowed improperly and set forth a revised computation deducting the state inheritance taxes, thereby producing a liability greater than the previous payments. The Commissioner noted that the additional tax produced by the correct computation was time-barred, but nonetheless rejected the refund claim. The issue before the Court was whether the Commissioner had authority to redetermine and reassess a tax after the expiration of the then-applicable statute of limitations. In affirming the Tenth Circuit decision upholding the Commissioner, the Supreme Court stated:

While the statutes authorizing refunds do not specifically empower the Commissioner to reaudit a return whenever repayment is claimed, authority therefor is necessarily implied. An overpayment must appear before a refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.

284 U.S. at 283, 52 S.Ct. at 146; *accord, Allstate Insurance Co. v. United States,* 213 Ct.Cl. 96, 107 n. 6, 550 F.2d 629, 634 n. 6 (1977) ("The rationale of *Lewis v. Reynolds*

(2) . . .

(A) the taxes imposed by this chapter for the taxable year . . . .

Section 57, entitled "Items of Tax Preference," also provided in pertinent part:

(a) In General.—For purposes of this part, the items of tax preference are—

(9) Capital gains.—

(A) Individuals.—In the case of a taxpayer other than a corporation, an amount equal to one-half of the amount by which the net long-term capital gain exceeds the net short-term capital loss for the taxable year.

is that a taxpayer should not be entitled to a refund unless he is entitled to one as a whole....") *see Dynamics Corp. of America v. United States,* 183 Ct.Cl. 101, 114, 392 F.2d 241, 249 (1968) ("It is clear that, although the statute of limitations may act to effectively bar the Commissioner from assessing a deficiency for a past year, it does not prohibit him from correctly recomputing tax liability for that year and using his corrected figures to offset a timely refund claim....." (citations omitted)).

Defendant cites leading progeny of *Lewis v. Reynolds* in this court, *Dysart v. United States,* 169 Ct.Cl. 276, 340 F.2d 624 (1965), and *Missouri Pacific Railroad Co. v. United States,* 168 Ct.Cl. 86, 338 F.2d 668 (1964), which extended the Supreme Court's decision to deny laches as a bar to an offset for the same taxpayer, the same tax, and the same taxable year. In both *Dysart* and *Missouri Pacific,* however, defendant had answered raising an offset. Defendant also offered as a supplemental authority the Federal Circuit's recent decision in *Disabled American Veterans v. United States,* 704 F.2d 1570 (Fed.Cir.1983), also involving a remand for calculation of quantum. Plaintiff in that case challenged recalculation of deductions because defendant had waived the defense of allocation of direct expenses, which was absent in its answer. While the court held "that there is simply no 'new defense' before us....", *Disabled American Veterans v. United States,* at 1572, defendant's position on deductions had been raised and preserved in earlier stipulations prior to trial.

Plaintiffs, in turn, rely on *May v. United States,* 43 A.F.T.R.2d ¶ 79–315 (E.D.Ky. 1978), *rev'd on other grounds,* 644 F.2d 578 (6th Cir.1981), in which the district court denied the Government's attempt to set off liability for the minimum tax after summary judgment had entered in plaintiffs' favor because defendant had failed to raise the possibility of an offset arising from the application of the minimum tax. Defendant presaged plaintiff's reliance on *May* in its moving papers, but argues unconvincingly for distinguishing that case. *May* proceeded through discovery (in which defend-

ant had alluded to possible offsetting of a *Lewis v. Reynolds* adjustment), while the remand in this case ensued only upon the Court of Claims' rejection of the jurisdictional defense and summary decision on liability in plaintiffs' favor. Defendant overlooks the facts that it answered prior to moving for summary judgment and that the disposition on the merits—should the jurisdictional defense have proved unavailing—came as no surprise after the court's merits decision on plaintiffs' same claim for the preceding tax year. Thus, no post-*Lewis v. Reynolds* case, other than *May,* addresses the precise factual situation now before the court.

*May,* however, runs athwart of *Lewis v. Reynolds'* spirit, if not its law, and is not followed in this case. The district court in *May* reaffirmed the rule in *Dysart* that plaintiff must shoulder the burden of proving its entitlement to a refund based on overpayment. The *May* case also correctly recognized that equitable considerations did not militate against discharging the burden if the setoff involves the same tax, the same tax year, and the same taxpayer. *May v. United States,* 43 A.F.T.R.2d ¶ 79–315 at 79–335 (quoting *Dysart v. United States,* 169 Ct.Cl. at 284, 340 F.2d at 629). Nevertheless, the district court ignored these principles in denying the offset for minimum tax.

In order to calculate the refund due plaintiffs in this case as a result of the 1982 decision affecting the 1973 tax year, ascertainment of plaintiffs' income tax liability for 1973 was impacted by the existence of the deduction for estate taxes under I.R.C. § 691(c) resulting from the 1979 Court of Claims decision. While *Lewis v. Reynolds* has never been interpreted to countenance the untimely amendment of pleadings to assert new claims, the Supreme Court's vintage decision fairly can be construed to allow adjustments—with respect to the same taxpayer, year, and tax—of a purely computational nature resulting from a court-ordered remand requiring the recomputation of taxable income or income tax imposed. That defendant asserted the

computational adjustment solely in the remand phase is not, under *Lewis v. Reynolds,* grounds for working a forfeiture.[2]

## CONCLUSION

The Clerk of the Court will enter judgment in plaintiffs' favor in the amount of $47,246.36. Defendant's motion for entry of computation is granted, and plaintiffs' is denied.

IT IS SO ORDERED.

Costs of the action exclusive of the proceedings on remand shall be assessed against defendant.

**2.** It is in this vein that the decision of the Federal Circuit in *Disabled American Veterans v. United States* provides guidance:

> Most important, the remand to the trial court generally charged that court to determine the exact amount of recovery. In so doing, the Court of Claims instructed the trial court to make a just and lawful calculation, considering all other factors it deemed relevant. One obviously relevant consideration was the proper amount of deductions. The Claims Court was therefore bound to consider deductions and to calculate them accurately regardless of who suggested the particular method used.... The days are long gone when technical rules of pleading could be used to force a court to arrive at a result contrary to recognized fact or law.

704 F.2d at 1572–73 (footnote omitted).