**LFAM CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 96–567T.

United States Court of Federal Claims.

Jan. 19, 1999.

Edwin C. Landis, Jr., Newark, NJ, for plaintiff.

Robert N. Dorosin, Washington, D.C., with whom was Assistant Attorney General Loretta C. Argrett, for defendant.

## OPINION

MEROW, Judge.

In this action the plaintiff is a New Jersey corporation seeking a refund of federal tax penalties imposed because plaintiff's federal income tax return for 1993 was filed over two months after the filing deadline. The matter is before the Court on the parties' motion and cross-motion for summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). For the reasons stated below, defendant's motion for summary judgment is granted and plaintiff's cross-motion is denied.

---

1. Unless otherwise noted all section references are to the Internal Revenue Code ("I.R.C.") and corresponding Treasury Regulations of 1986 in effect for the years in issue.

## BACKGROUND

### Facts

For the purposes of this decision the following facts are undisputed. Plaintiff, LFAM Corporation ("LFAM"), a calendar year taxpayer, was statutorily required to file a corporate tax return for the 1993 tax year with the Internal Revenue Service ("IRS") on or before March 15, 1994. LFAM filed its tax return for 1993 on May 19, 1994 and concurrently paid estimated tax of $15,170.68.

The IRS sent a notice of assessment, dated July 4, 1994, informing plaintiff that LFAM's 1993 tax return contained a mathematical error which had resulted in an underpayment of tax for the 1993 tax year. The IRS calculated plaintiff's total tax as $15,682.13 and requested payment of $511.45 to remedy the deficiency. In addition, the IRS imposed: (1) a penalty for late filing in the amount of $2,117.09; (2) a penalty for underpayment of estimated tax in the amount of $619.46; (3) a penalty for late payment of tax in the amount of $227.56, and; (4) calculated interest due in the amount of $248.52. These penalties are pursuant to provisions of the Internal Revenue Code ("I.R.C.") codified at Title 26 of the United States Code.[1] On or about July 19, 1994, LFAM paid the tax deficiency as well as the full amount of the penalties and interest fees levied by the IRS.

On September 14, 1994, LFAM sent a letter to the IRS and applied for a refund of the penalties imposed for untimely filing of a tax return, underpayment of estimated tax and late payment of tax. In that correspondence LFAM placed blame upon Bramblewood Investors, Ltd. ("Bramblewood"), a limited partnership interest which had realized taxable income for 1993.[2] Specifically, LFAM offered the IRS the following explanation:

> The reason for late filing, failure to pay estimated tax and late payment was the fact that the tax due resulted from the K-1

---

2. On line 10 of its 1993 return LFAM reported $383,439.00 of income received from Bramblewood as "other income."

from Bramblewood Investors. That K–1 reported about $383,000 of phantom income that resulted from the foreclosure of Bramblewood's property. That amount was unknown to the taxpayer Company until the K–1 was received from Bramblewood on April 14, 1994. Because of other commitments the return could not be prepared immediately but was prepared and filed and the tax paid as promptly as possible—one month later.

Letter from Edwin C. Landis, Jr., President, LFAM Corporation, to IRS, Holtsville, New York (Sept. 14, 1994) (Def.'s Ex. 5).

The IRS responded separately to each penalty for which plaintiff applied for a refund. First, in a letter dated January 6, 1995, the Director of the IRS Service Center in Holtsville, New York, denied plaintiff's request to adjust the late filing penalty and stated that LFAM had neither established reasonable cause nor shown due diligence for adjusting the penalty. The IRS gratuitously advised plaintiff that the penalty could have been avoided had LFAM requested an extension of time to file its 1993 return. In a second, unsigned notice which was also apparently generated at the Holtsville Service Center and dated January 30, 1995, the IRS agreed to withdraw the penalty for late payment of tax. However, in the same correspondence the IRS retroactively increased the previously assessed late filing penalty by $235.23.[3]

On or about March 27, 1995, LFAM appealed the late filing penalty to the IRS Service Center Penalty Appeal Coordinator. By letter dated April 25, 1996, the IRS forwarded a copy of the Appeals Officer's decision notifying LFAM that the late filing penalty was sustained. The decision also explained that the apparent increase in the late filing penalty was the result of a mathematical error by the IRS in its first calculation of the late filing penalty and the late payment penalties.[4]

On May 14, 1996, LFAM, submitted IRS form 843, "Claim for Refund and Request for Abatement," and once again requested a refund of the late filing penalty. On July 12, 1996, LFAM was advised by the IRS that this claim was disallowed because the request for penalty abatement had previously been denied by an Appeals Officer.

Plaintiff then filed a complaint in this Court on September 11, 1996 seeking: (1) a refund of the late filing penalty of $2,117.09 originally assessed against LFAM; (2) a refund of the $235.23 increase in the late filing penalty which was imposed as a result of the IRS's decision to remove the penalty for untimely payment of tax; and (3) interest, costs and attorney's fees. The defendant interposed an answer on January 6, 1997.

### Summary Judgment Motion

This matter is currently before the Court upon defendant's motion and plaintiff's cross-motion, both seeking summary judgment

3. A third notice, also from the Holtsville Service Center, dated June 10, 1996 informed LFAM, without explanation, that the IRS had abated the penalty for underpayment of estimated tax and would refund to plaintiff the sum of $619.46 plus interest. That correspondence indicated that plaintiff should call its IRS Service Center for an explanation of the refund. Plaintiff's application for refund of the assessed penalties was severed and the issues raised were addressed many weeks and sometimes months apart. Further, the actions taken by the IRS to remove, refund and reassess penalties were largely unexplained and what little guidance was provided was replete with vague and contradictory statements. The record shows that plaintiff experienced substantial frustration with the IRS in this matter.

4. It was not until August 1996 that plaintiff received a second explanation for the automatic increase of the penalty for late filing which was

attributed to the removal of the penalty for late payment of tax:

\* \* \* \* \* \*

... the penalty for Failure to Pay Timely was removed.... [W]hen the penalties for failure to pay timely and failure to file timely are both asserted the failure to file timely is reduced to 4½% (Normally the penalty is 5%) (sic) for each month for (sic) your return is late, and the failure to pay timely is 1/2% for each month your tax is not fully paid. By law when the failure to file penalty is not asserted, we must apply the full failure to file penalty of 5% for each month your return was late.

When we removed the penalty for failure to pay timely, the penalty for failure to file timely was automatically increased by $235.23.

\* \* \* \* \* \*

Letter from Tax Examiner, IRS Problem Resolution Office, to LFAM (August 18, 1995)(Def.'s Ex. 10).

pursuant to RCFC 56. Defendant argues that the late filing penalty is appropriate because LFAM has both willfully neglected its statutory responsibility and has not demonstrated reasonable cause for its failure to file the 1993 tax return on time.

In its opposition and cross-motion LFAM claims the late filing penalty is improper and should be refunded as a matter of law. Plaintiff urges this Court to find: (1) that the penalty was improperly imposed; and (2) to determine that LFAM's explanation stated a reasonable cause for the delay in filing its 1993 tax return. Arguing that it was a victim of circumstances beyond its control, the only justification LFAM offers for its delay is that it did not believe it owed any tax for 1993 except for the income reflected on Bramblewood's K–1. Therefore, LFAM delayed filing its 1993 tax return while waiting for Bramblewood to provide a K–1. LFAM argues that it had no control over when it would receive Bramblewood's K–1 and should not be penalized for the delayed filing since the K–1 was not delivered to LFAM until after the March 15, 1994 deadline had passed.

Apparently in response to defendant's remarks that plaintiff could have avoided the penalty and requested an extension of time to file its 1993 tax return, LFAM argues that defendant has failed to demonstrate damages arose from the delayed return. Specifically, plaintiff argued that it had accumulated substantial carryover losses during the preceding years, such that any income realized in 1993 was negated. Therefore, based upon the premise that no tax was owed, LFAM argued that even if an extension form had been filed, the 1993 tax would not have been owed until the income reported by Bramblewood was calculated into LFAM's tax return. Accordingly, LFAM argues, defendant has failed to demonstrate any loss of revenue as a result of plaintiff's late 1993 tax return.

**5.** RCFC 56 is patterned upon Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ. P.") and is similar in both language and effect. Both rules state the summary judgment is appropriate in situations in which "the pleadings, depositions, answers to interrogatories, and admis-

## DISCUSSION

### Standard of Review

Jurisdiction over this controversy is present since Congress has granted the Court of Federal Claims the authority to determine claims seeking the refund of taxes paid and penalties alleged to have been improperly collected pursuant to 28 U.S.C. § 1491(a). *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991) (describing Congressional grant of jurisdiction over tax refund cases in both Court of Federal Claims and District Court).

In order to grant a motion for summary judgment pursuant to RCFC 56,[5] the Court must find that there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* RCFC 56(c). In cases in which both parties move for summary judgment, each party bears the burden of demonstrating the absence of material facts in its own case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The Court must evaluate each party's motion independent of the other, and resolve all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987). In order to prevail upon a motion for summary judgment, a party must demonstrate that no facts exist which would change the outcome of the litigation under the substantive law governing the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The role of the Court in determining a motion for summary judgment is not to weigh the evidence, rather it determines questions of law based upon undisputed facts. *See Betz v. United States*, 40 Fed. Cl. 286, 295 (1998).

### Penalty for Late Filing of Tax Return

▬ It is further well established that pursuant to the established system of self

sions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); Fed.R.Civ.P. 56.

assessment, the taxpayer is responsible for ensuring that tax returns are filed on time. *United States v. Boyle,* 469 U.S. 241, 247, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). The general rule is that, with few exceptions, all corporate taxpayers must file tax returns each year regardless of the amount of gross income realized. I.R.C. § 6012(a)(2); 26 C.F.R. § 1.6012–2. For corporations like LFAM, which file their returns on a calendar year basis, the filing deadline is the 15th of March following the close of the calendar year. I.R.C. § 6072(b). Corporate taxpayers who are unable to file returns within the prescribed time period may obtain an automatic extension for filing the tax return "if ... there is filed on behalf of such corporation the form prescribed ... and if such corporation pays, on or before the date prescribed for payment of the tax, the amount properly estimated as its tax...." I.R.C. § 6081(b).

Failure to file a tax return, or to request the appropriate extension, results in a mandatory penalty pursuant to I.R.C. § 6651(a)(1).[6] The statute requires the IRS to impose a fine each month, or fraction of a month during which the tax return is late, in the amount of 5 percent of the tax owed. *Id.* The maximum fine the IRS may impose under this provision is 25 percent of the base tax. *Id.* In order to avoid the penalty the taxpayer must demonstrate that the failure was due to reasonable cause and not willful neglect. I.R.C. § 6651(a)(1); 26 C.F.R. § 301.6651–1(a)(1)(i). However, neither "reasonable cause" nor "willful neglect" is defined in the I.R.C.

The Federal Regulations provide some guidance, explaining that the term "reasonable cause" for failure to file a timely income tax return describes the situation in which a "taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." 26 C.F.R. § 301.6651–1(c). *See Boyle,* 469 U.S. at 246, n. 4, 105 S.Ct. 687–("Congress obviously intended to make absence of fault a prerequisite to avoidance of the late-filing

penalty."). With regard to the term "willful neglect," however, the Regulations are silent. The judiciary has interpreted "willful neglect" to mean "a conscious, intentional failure or reckless indifference." *Boyle,* 469 U.S. at 245, 105 S.Ct. 687 (describing generally accepted standards which have arisen from 70 years of use of these terms in statutes).

■ It is undisputed that LFAM mistakenly believed that, based upon its own income data, it did not have an obligation to file its own tax return for 1993 because it purportedly did not owe tax. I.R.C. § 6012(a)(2); 26 C.F.R. § 1.6012–2. Failure to file is not excused by a belief that no tax is owed. *See Rubber Research v. Commissioner,* 422 F.2d 1402, 1407 (8th Cir.1970) (affirming Tax Court's determination that failure to timely file tax return was not excused by corporate taxpayer's assertion that no tax was due). It is further uncontested that LFAM delayed filing its tax return until two months and four days after the deadline had passed because it was allegedly waiting for Bramblewood to provide a K–1 statement reflecting income for 1993. LFAM argues that it was at Bramblewood's mercy while waiting for this tax document to be provided and likens itself to taxpayers whose documents have been destroyed by fire or other casualty. This argument is not convincing.

■ The Supreme Court enunciated a bright line test in *Boyle* and held that a taxpayer could not avoid penalties for late filing of a tax return simply because the taxpayer had delegated the task of timely filing tax returns to an agent, such as an attorney. *Boyle,* 469 U.S. at 252, 105 S.Ct. 687. In *Boyle,* the Court unambiguously asserted that "one does not have to be a tax expert to know that tax returns have fixed filing dates and taxes must be paid when they are due. In short, tax returns imply deadlines." *Boyle,* 469 U.S. at 251, 105 S.Ct. 687. It is also well established that "when there is no question that a return must be filed, the taxpayer has a personal, non-delegable duty to file the tax return when due."

---

**6.** The penalty is mandatory only in cases in which there has also been an underpayment of

tax. I.R.C. § 6651(b)(1).

*Carmean v. United States,* 4 Cl.Ct. 181, 185 (1983) (citing *United States v. Kroll,* 547 F.2d 393, 396 (7th Cir.1977)) (refusing to accept as reasonable cause plaintiff's excuse that he relied upon his attorney to ensure tax return was filed on time).

■ It is not uncommon for a taxpayer to rely upon a third party to provide income data necessary for filing a tax return. However, just as taxpayers have been expressly precluded from idly standing by and permitting their agents to ignore filing deadlines, taxpayers cannot passively wait for a third party to provide documents while allowing a critical filing deadline to slip by. *See Boyle,* 469 U.S. at 252, 105 S.Ct. 687 (asserting that reliance upon a third party cannot function as a substitute for compliance with an unambiguous statute); *see also Feldman v. Commissioner,* 65 T.C.M. (CCH) 1747 (1993) (refusing to accept excuse that taxpayer's filed tax return late because they were waiting to receive material information from unrelated third parties outside taxpayer's control), *aff'd,* 20 F.3d 1128 (1994); *Estate of Campbell v. Commissioner,* 62 T.C.M. (CCH) 1514 (1991) (holding that taxpayer's inability to obtain information does not generally constitute reasonable cause if a tax return could have been filed with a reasonable degree of accuracy based upon best knowledge).

■ Regardless of whether LFAM expected to have income from Bramblewood, plaintiff had a statutory duty to file a tax return for 1993 on or before the March 15, 1994 deadline. I.R.C. § 6012(a)(2). The undisputed facts in this case demonstrate that LFAM made no attempt to file a tax return on or before that deadline. No special training or business acumen is required to become informed of a deadline and ensure that it is met. Conscious disregard for such a straightforward responsibility as complying with a filing deadline does not support a finding that LFAM exhibited "ordinary business care and prudence." *See* 26 C.F.R. § 301.6651–1(c). Accordingly, LFAM's passive reliance upon Bramblewood to provide material tax information in sufficient time for LFAM to file a timely tax return is not a reasonable cause for the delay. Nor has LFAM demonstrated that its conscious indif-

ference to the filing deadline was not an example of willful neglect of its responsibilities as a matter of law. I.R.C. § 6651(a)(1); *see Boyle,* 469 U.S. at 245, 105 S.Ct. 687.

■ Further, it is undisputed that although LFAM received Bramblewood's K–1 on April 14, 1994 it delayed filing the appropriate tax return until May 19, 1994 because of previously scheduled commitments. In accord with the well established rule, first enunciated in the Tax Court, that a taxpayer's preoccupation with his own business activities is not a reasonable cause for failing to file a tax return on time, plaintiff's delay is not excusable. *See In re Craddock,* 149 F.3d 1249, 1255–57 (10th Cir.1998) (citations omitted) (assessing penalty against taxpayer who filed late because he was having trouble "putting it all together"); *Mylonas v. Commissioner of Internal Revenue,* No. 20654–97, 1998 WL 862489 (U.S.Tax Ct. Dec. 14, 1998) (enforcing additions to tax based upon plaintiff's decision to continue running his business while ignoring his tax filing obligations).

Therefore, and for the reasons stated above, as no valid basis has been shown to overturn the imposition of the penalty for late filing pursuant to I.R.C. § 6651(a)(1), defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

### Retroactive Increase in Late Filing Penalty

■ In the complaint, plaintiff has requested abatement of the $253.32 increase to the late filing penalty. The government asserts the increase was caused by the removal of the late payment penalty imposed pursuant to I.R.C. § 6651(a)(2). *See* I.R.C. § 6651(c)(1).

As discussed in detail above, I.R.C. § 6651(a)(1) unambiguously imposes a fine of 5% of the tax due for each month or portion of a month in which the tax return is overdue. Further, pursuant to I.R.C. § 6651(a)(2) there is a fine of 0.5% of the tax due for each month or portion of a month in which the tax payment is overdue. However, in situations in which the taxpayer has both filed the tax return late and paid the tax late, rather than compound the penalty, Congress

has limited the total amount of the penalty to 5%. I.R.C. § 6651(c)(1).[7]

For the period of time during which both the penalty for late payment and late filing are imposed, the application of I.R.C. § 6651(c)(1) has the effect of reducing the penalty for late filing by 0.5% (the amount of the late payment penalty) to 4.5% of the tax due for each month or portion of a month in which the tax return is overdue. However, the reduction is not a total offset, it only occurs when additions to tax are imposed under both I.R.C. § 6651(a)(1) and I.R.C. § 6651(a)(2) for the same months and only to the extent of the addition to tax under I.R.C. § 6651(a)(2) for such months. *See Estate of Rauhoff v. Commissioner,* 44 T.C.M. (CCH) 968 (1982).

Accordingly, the practical effect of removing the penalty for late payment of tax was not a reduction of penalty costs, as LFAM might have expected. After the removal of the penalty for late payment pursuant to I.R.C. § 6651(a)(2), only the penalty for late filing of the tax return remained pursuant to I.R.C. § 6651(a)(1). Under that provision, the proper penalty was 5% of the tax due for each month or portion of a month in which the tax return was overdue. Accordingly, since plaintiff's tax was overdue for two full months and a portion of a third month, the appropriate penalty of 5% of the owed tax of $15,682.13 was imposed, which amounts to $253.32.

Plaintiff's expressed frustration in this matter appears to stem from an apparent miscalculation of penalty, as first imposed by the IRS, which was corrected, concurrent with the removal of the penalty pursuant to I.R.C. § 6651(a)(2). An adequate contemporaneous explanation by the IRS of the interaction of the various penalty provisions when imposed upon plaintiff would have served to alleviate the frustration and confusion involved and, perhaps, obviated this litigation. However, there is no provision which would permit this Court to unilaterally reduce the penalty prescribed by Congress because of IRS engendered confusion. *See Disabled American Veterans v. United States,* 704 F.2d 1570, 1572 (Fed.Cir.1983).

Accordingly, the increase in the penalty pursuant to I.R.C. § 6651(a)(1) brought about by the removal of the fine imposed pursuant to I.R.C. § 6651(a)(2) is sustained as a matter of law. *See* I.R.C. § 6651(c)(1).

## CONCLUSION

Based upon the foregoing it is concluded that the defendant's motion for summary judgment is **GRANTED** and the plaintiff's motion for summary judgment is **DENIED**. The Clerk is directed to enter judgment for the Defendant. No costs.

---

7. The statute states in relevant part:
    **(c) Limitations and special rule.—**
        **(1) Additions under more than one paragraph.**—With respect to any return, the amount of the addition under paragraph (1) of subsection (a) shall be reduced by the amount of the addition under paragraph (2) of subsection (a) for any month (or fraction thereof) to which an addition to tax applies under both paragraphs (1) and (2)....
I.R.C. § 6651(c)(1).